[No. S115738. June 2, 2005.]

DONALD PAUL WARRICK, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES POLICE DEPARTMENT et al., Real Parties in
Interest.

1014

## Counsel

Michael P. Judge, Public Defender, Albert J. Menaster, Leslie Ringold and Mark G. Harvis, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Rockard J. Delgadillo, City Attorney, Cheryl J. Ward and Claudia McGee Henry, Assistant City Attorneys, Kim Rodgers Westhoff, Martin R. Boags and Michelle S. Wright, Deputy City Attorneys, for Real Parties in Interest.

## OPINION

**KENNARD, J.**—On a showing of good cause a criminal defendant is entitled to discovery of relevant documents or information in the personnel records of a police officer accused of misconduct against the defendant. (Evid. Code, § 1043, subd. (b).)[1] Good cause for discovery exists when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 [260 Cal.Rptr. 520, 776 P.2d 222] (*Santa Cruz*).) A showing of good cause is measured by "relatively relaxed standards" that serve to "insure the production" for trial court review of "all potentially relevant documents." (*Ibid.*)

At issue here is the first part of the good cause requirement—the materiality to the pending litigation of the discovery sought. Specifically, the question is this: What must the defendant show to warrant the court's in-chambers review of documents or information in the officer's personnel file that is potentially relevant to the claimed misconduct? We hold that to obtain in-chambers review a defendant need only demonstrate that the scenario of alleged officer misconduct could or might have occurred.

## I.

According to the police report, which was attributable to the three arresting officers, about 6:00 p.m. on April 23, 2002, Officers Quezada, Lopez, and Ramirez of the Special Enforcement Unit of the Los Angeles Police Department (LAPD) were in a marked car patrolling Fifth Street between Spring Street and Towne Avenue, an area known for violent crime and narcotics activities. The officers noticed defendant standing next to a wall looking at a clear plastic baggie in his left hand; the baggie contained "off-white solids." When the officers got out of the patrol car, defendant fled, discarding "numerous" off-white lumps "resembling rock cocaine." While Officer Quezada retrieved 42 lumps from the ground, Officers Lopez and Ramirez arrested defendant after a short pursuit. Defendant had an empty baggie in his hand; his pockets contained $2.75 in cash and three porcelain spark plug chips, which Officer Quezada described as "a common tool" of auto thieves for smashing car windows. Defendant was arrested for possession of cocaine

---

[1] Unless otherwise indicated, all statutory references are to the Evidence Code.

for sale (Health & Saf. Code, § 11351.5), and for possession of burglary tools (Pen. Code, § 466). At the time of the arrest, defendant was on parole for burglary.

Defendant was charged with one count of possessing cocaine base for sale (Health & Saf. Code, § 11351.5), and was alleged to have a prior conviction for a serious or violent felony (Pen. Code, §§ 1170.12, subds. (a)–(d), 667, subd. (b)), as well as having served a prior prison term (*id.*, § 667.5, subd. (b)). Defendant pled not guilty and denied the allegations.

Before trial, defendant filed a so-called *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*)) under section 1043 for disclosure of any previous citizen complaints against the three arresting officers for making false arrests, falsifying police reports, or planting evidence. Defendant also sought discovery of a long list of other misconduct by the officers. (See *post,* p. 1022.)

In support of the motion, defense counsel submitted a declaration giving this version of the events leading to defendant's arrest: When the three officers got out of the patrol car, defendant, who feared an arrest on an outstanding parole warrant, started to run away, but within moments the officers caught up with him. Meanwhile, there were "people pushing and kicking and fighting with each other" as they collected from the ground objects later determined to be rock cocaine. After two officers retrieved some of the rocks, an officer told defendant, " 'You must have thrown this.' " Defendant denied possessing or discarding any rock cocaine. He said he was in the area to buy cocaine from a seller who was present there. Defense counsel suggested that the officers, not knowing who had discarded the cocaine, falsely claimed to have seen defendant, who was running away, do so. Seeking to show that the officers had falsely arrested defendant and fabricated the facts in the arrest report, the defense sought to discover previous complaints against the officers for dishonesty.

In opposition, the city attorney on behalf of the LAPD argued that defendant had done nothing more than deny his guilt, and that he had not affirmatively set out any facts to describe a specific factual scenario. Arguing that defense counsel's declaration was essentially a denial of the charges, the "logical equivalent" of defendant's not guilty plea, the city attorney maintained that defendant "needs to assert plausible facts, not reenter his plea." The city attorney also asserted that defendant's contention that the officers falsely claimed to have seen defendant discard the cocaine was not plausible because defendant failed to explain how he happened to be in precisely the area where rock cocaine was allegedly discarded by another person, or why the officers would accuse him of having possessed the cocaine, or, knowing

that he was innocent, why they would have planted it on him. According to the city attorney, a scenario "which *might* have happened" was implausible; to be plausible a scenario must be "believable."

Concluding that defendant had not made the required showing of good cause, the trial court declined to order the LAPD to produce the officers' records for in-chambers review, and it denied defendant's *Pitchess* motion. Referring to the allegations in defense counsel's affidavit, the trial court stated: "It appears to me that this is not police misconduct but really an argument about what happened, one that should be resolved by the trial court, but not one that gives rise to looking at a police personnel file based on the paucity of information and the implausibility of the defendant's allegation as to why somehow these officers must have engaged in misconduct." The court paraphrased defendant's claim of officer misconduct in these words: "I don't know what they did, but I did not have drugs, therefore they must have done something wrong."

In August 2002, after the Court of Appeal's summary denial of his petition for a writ of mandate, defendant sought review in this court. We granted review and transferred the matter to the Court of Appeal, directing that court to issue an order to show cause why defendant was not entitled to the relief he sought. After issuing the order and receiving briefing from the parties, the Court of Appeal denied issuance of the writ. It held that defendant had satisfied only one of the two requirements for good cause. The Court of Appeal acknowledged that defense counsel's declaration presented a specific factual scenario of police misconduct. But the court concluded, as the trial court had, that defendant's declaration failed to satisfy "the second element of good cause, the articulation of a 'plausible factual foundation' " for his officer misconduct claim. Quoting a dictionary definition of the word "plausible" as " 'worthy of approval or acceptance; credible; believable,' " the Court of Appeal concluded that defendant's factual scenario failed to show "a degree of reasonable probability, a degree of apparent credibility greater than mere possibility." It held that the trial court had not abused its discretion in denying defendant's *Pitchess* motion, and it denied defendant's petition for a writ of mandate. As we explain below, the Court of Appeal applied a stricter standard for obtaining in-chambers review of officer personnel information than is required by law.

## II.

 This court's 1974 decision in *Pitchess, supra,* 11 Cal.3d at pages 536 to 537, established that a criminal defendant could "compel discovery" of certain relevant information in the personnel files of police officers by making

"general allegations which establish some cause for discovery" of that information and by showing how it would support a defense to the charge against him.

■ In 1978, the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045. (Added by Stats. 1978, ch. 630, §§ 1–3 & 5–6, pp. 2082–2083; see *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 9 [124 Cal.Rptr.2d 202, 52 P.3d 129].) To initiate discovery, the defendant must file a motion supported by affidavits showing "good cause for the discovery," first by demonstrating the materiality of the information to the pending litigation, and second by "stating upon reasonable belief" that the police agency has the records or information at issue. (§ 1043, subd. (b)(3).) This two-part showing of good cause is a "relatively low threshold for discovery." (*Santa Cruz, supra,* 49 Cal.3d at p. 83.)

If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226–1227 [114 Cal.Rptr.2d 482, 36 P.3d 21]; see *City of Los Angeles v. Superior Court, supra,* 29 Cal.4th at pp. 9–10.) The trial court may not disclose complaints more than five years old, the "conclusions of any officer" who investigates a citizen complaint of police misconduct, or facts "so remote as to make [their] disclosure of little or no practical benefit." (§ 1045, subd. (b); see *City of Los Angeles, supra,* 29 Cal.4th at p. 9.) Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer. (See *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1089–1090 [12 Cal.Rptr.3d 467].) That practice "imposes a further safeguard to protect officer privacy where the relevance of the information sought is minimal and the officer's privacy concerns are substantial." (*Id.* at p. 1090.)

■ At issue here is the showing of good cause required for *Pitchess* discovery. According to the Court of Appeal, to establish good cause under section 1043 the defense must show materiality to the pending action by setting forth a " 'specific factual scenario' " that establishes "a 'plausible factual foundation' " for the alleged officer misconduct. The quoted phrases of the Court of Appeal's test derive from language in certain decisions of this court, which we discuss below.

## III.

In *Santa Cruz, supra,* 49 Cal.3d at pages 78–79, the defendant, who was charged with resisting arrest, contended that officers had used excessive force

to arrest him, and he sought disclosure of prior complaints of excessive force made against those officers. Defense counsel's supporting declaration asserted that the defendant had been handcuffed, grabbed by the hair, thrown to the ground, and one officer had stepped on his head while another " 'twisted his arm behind his back.' " (*Id.* at p. 79.) Focusing on the materiality of the information sought to the pending litigation, we concluded that the declaration's description of specific acts of officer force against the defendant set out "*a specific factual scenario*" to support the defendant's claim of excessive force. (*Id.* at p. 85, italics added.) We went on to say that when considered together with the police reports (stating that one officer punched defendant and then helped another officer wrestle the defendant to the ground), "counsel's averments establish *a plausible factual foundation* for an allegation of excessive force." (*Id.* at p. 86, italics added.) Moreover, we continued, defense counsel's averments "put the court on notice that the officers' alleged use of excessive force" was a potential defense to the resisting arrest charge against the defendant, and they "articulate[d] a valid theory" of how prior excessive force complaints against the officers "might be admissible." (*Ibid.*) In sum, in *Santa Cruz* the declaration of defense counsel "plainly demonstrated" the materiality of the information sought to the crime charged and the proposed defense to it. (*Ibid.*)

The origins of the "plausible factual foundation" language this court used in *Santa Cruz* can be traced to cases of criminal discovery predating our 1974 decision in *Pitchess, supra,* 11 Cal.3d 531. Eight years earlier, in *Ballard v. Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], we stated that a criminal defendant's motion for discovery must describe the information sought and "must be sustained by *plausible justification*." (*Id.* at p. 167, italics added.) Thereafter, in *Hill v. Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353], we quoted the "plausible justification" language from *Ballard* and said that a criminal defendant was "not entitled to inspect material as a matter of right" but must make "a prior showing of good cause." (*Id.* at p. 817.) Three months later, we decided *Pitchess.* As mentioned earlier, under *Pitchess* a criminal defendant is entitled to discover certain information from a police officer's personnel records that would support a defense to the charge against the defendant—a holding that the Legislature codified in 1978. Several years later, we noted the similarity between the "good cause" test of the statutory scheme and the "plausible justification" test used in our pre-*Pitchess* cases, and we concluded that the Legislature had not intended to abrogate that older case authority when it codified our *Pitchess* holding. (*People v. Memro* (1985) 38 Cal.3d 658, 679, fn. 19 [214 Cal.Rptr. 832, 700 P.2d 446].)

## IV.

In the 15 years since our decision in *Santa Cruz, supra,* 49 Cal.3d 74, the Courts of Appeal have repeatedly had to determine whether a defendant has shown good cause for in-chambers review of a police officer's personnel records by making the threshold showing·that the information sought is material to the pending litigation. Some Courts of Appeal have described the good cause inquiry in language that hews rigorously to descriptive terms this court used in *Santa Cruz,* and they assess good cause under a two-part test requiring a "specific factual scenario" that establishes a "plausible factual foundation." (See, e.g., *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1020–1023 [101 Cal.Rptr.2d 379]; *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1146–1150 [79 Cal.Rptr.2d 624].) Other Courts of Appeal have framed the good cause inquiry around the statutory formulation of materiality to the subject matter of the pending litigation (§ 1043, subd. (b)) or some equivalent terminology. (See, e.g., *People v. Johnson* (2004) 118 Cal.App.4th 292, 303 [12 Cal.Rptr.3d 885] [defense counsel's declaration provided "a sufficient factual foundation" to show materiality of the officer's truthfulness]; *People v. Hustead* (1999) 74 Cal.App.4th 410, 416–417 [87 Cal.Rptr.2d 875] [defendant "must make an initial showing that the information he is seeking is material to the case at hand"].)

 Regardless of how the materiality inquiry is described, however, a showing of good cause requires a defendant seeking *Pitchess* discovery to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events. This court has long required that the information sought must be described with some specificity to ensure that the defendant's request is not so broad as to garner " 'all information which has been obtained by the People in their investigation of the crime' " but is limited to instances of officer misconduct related to the misconduct asserted by the defendant. (*Pitchess, supra,* 11 Cal.3d at p. 537; accord, *People v. Mooc, supra,* 26 Cal.4th at p. 1226; *Santa Cruz, supra,* 49 Cal.3d at p. 85.)

This specificity requirement excludes requests for officer information that are irrelevant to the pending charges. (See, e.g., *People v. Hustead, supra,* 74 Cal.App.4th at p. 416 [prior complaints of excessive force by arresting officer "irrelevant" after charge of resisting arrest was dropped and remaining charge was evasion of arrest in an automobile].) And it enables the trial court to identify what types of officer misconduct information, among those requested, will support the defense or defenses proposed to the pending charges. This inquiry establishes the statutorily required materiality prong of the good cause

showing that a defendant must make to receive in-chambers review of potentially relevant officer records.

## V.

Here, the Court of Appeal characterized defendant's discovery request as overbroad. Defendant's *Pitchess* motion sought complaints of officer misconduct and discipline relating to acts or attempted acts of "aggressive behavior, violence, excessive force, . . . racial bias, gender bias, ethnic bias, sexual orientation bias, coercive conduct, violation of constitutional rights . . . . [¶] . . . [and] misconduct amounting to moral turpitude" such as "false arrest, planting evidence, fabrication of police reports, fabrication of probable cause, false testimony, perjury, using excessive force, making false arrests, writing false police reports to cover up the use of excessive force, and false or misleading internal reports including . . . false overtime or medical reports." Included in this exhaustive list were items, such as gender or sexual orientation bias, that were completely untethered either to the factual scenario or to the proposed defenses outlined in defense counsel's declaration. At the hearing on the *Pitchess* motion, defense counsel did not advance any additional justification for the relevance of all the requested categories. The Court of Appeal observed that "the vast majority of categories of possible misconduct" listed by the defense had "no support" in the factual scenario outlined by counsel, and it specifically rejected the request for documents in the officers' personnel files that would relate to false overtime claims. The Court of Appeal concluded that only information about prior complaints that any of the three officers "had made false statements in police reports" would have relevance to petitioner's claims of officer misconduct.

The Court of Appeal also concluded that defendant had not shown good cause for discovery of prior complaints of false statements in police reports written by the three arresting officers, because he had not established a "plausible" factual scenario. Defendant's factual scenario, according to the Court of Appeal, "was not objectively plausible," that is, "no reasonable person would find it plausible." Correctly acknowledging that "collateral supportive evidence" is not necessary to establish a plausible factual foundation for alleged officer misconduct, the Court of Appeal nonetheless concluded that such evidence "contributes" to such a finding.

As we mentioned earlier, defendant was charged with possessing cocaine base for sale. Defense counsel's declaration in support of the *Pitchess* motion, however, denied that defendant had "possess[ed] any narcotics for the purpose of sale on the date of his arrest" and denied that defendant had discarded any rocks of cocaine. Instead, the declaration stated, defendant was at the scene to buy cocaine and, fleeing at the sight of the officers because he

feared arrest for an outstanding parole warrant, ran past the actual seller. Defense counsel postulated two explanations—either the officers did not know who had discarded the rocks of cocaine and they falsely accused defendant of having done so, or they knew who had discarded the cocaine but falsely accused defendant. Under either theory, defense counsel asserted, the officers falsely arrested defendant and made false statements in the police report to support his arrest. This factual scenario, the Court of Appeal concluded, was specific. We agree.

We are not persuaded, however, by the Court of Appeal's further conclusion that defendant's factual foundation was not "plausible." His proposed defense to the charge of possessing cocaine base for sale was straightforward: he asserted he did not possess, and therefore could not have discarded, the 42 rocks of cocaine. By denying the factual assertions made in the police report—that he possessed and discarded the cocaine—defendant established "a reasonable inference that the [reporting] officer may not have been truthful." (*People v. Hustead, supra,* 74 Cal.App.4th at p. 418.)

In the Court of Appeal's view, defendant's showing fell short by not providing a plausible factual foundation for his allegations of officer misconduct. Referring to a dictionary definition, the court stated that " '[p]lausible' means 'seemingly true' " and "denotes a degree of reasonable probability, a degree of apparent credibility greater than mere possibility." The Court of Appeal, in effect, concluded that to establish good cause for *Pitchess* discovery a defendant must show not only that the proposed factual scenario when "[v]iewed in conjunction with the police reports" will support his allegations of officer misconduct (*Santa Cruz, supra,* 49 Cal.3d at p. 86), but also a *reasonable probability* that the defendant's version of events actually occurred.

According to the Court of Appeal, defendant's factual scenario was "not objectively plausible." It reasoned that his possessing only $2.75 when arrested was materially inconsistent with his story that he was on the scene to buy, not to sell, cocaine and that he brought an empty baggie to hold his purchase. The Court of Appeal also noted that "[o]ther undisputed facts add to the implausibility of the scenario" defendant had asserted. Questioning why a person other than defendant would have discarded the 42 rocks of cocaine in public view, the Court of Appeal stated: "[I]t defies belief that a person would have followed" the fleeing defendant pursued by officers "in order to discard the cocaine in [defendant's] proximity, in the middle of a street."

The Court of Appeal's conclusion that defendant's factual scenario was implausible turns on assumptions lacking any factual basis or relies on

inferences it drew that went beyond the facts as described in the police report and in defense counsel's declaration. Defense counsel's declaration asserted that the true seller tossed the cocaine as defendant ran past the seller, "who was not running." The police report stated that two officers pursued defendant as he ran *down the sidewalk* and that he discarded the cocaine as he started to run across a street. But neither the police report nor defense counsel's declaration described the discarded cocaine as having been found "in the middle of the street," as the Court of Appeal asserted.

Defense counsel's declaration in support of the *Pitchess* motion, the parties' argument at the hearing on the motion, and the police report make no mention of the street price of a single rock of cocaine the size of the 42 pieces recovered, which together weighed only 0.10688 of an ounce. The Court of Appeal questioned why, if defendant was buying cocaine, he had so little cash. One could just as well question why, if defendant was *selling* 42 rocks of cocaine, he had only $2.75 in his pockets with which to make change for his customers. Nor is it unlikely that in an area described by the officers as one of "blatant" narcotics sales, someone other than defendant might discard 42 rocks of cocaine to avoid being found in possession of a saleable quantity of drugs.

Having decided that defendant had too little cash to buy cocaine and that only he would have discarded the rocks of cocaine in question, the Court of Appeal concluded that defendant's factual scenario was implausible, not because his version of events could not have occurred, but because in the court's view that version of events was unlikely. In doing so, the Court of Appeal elevated the showing of good cause for *Pitchess* discovery beyond that required by law.

To show good cause as required by section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence (*People v. Hustead, supra,* 74 Cal.App.4th at p. 417; *Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 32–33 [239 Cal.Rptr. 264]) that would support those proposed defenses. These requirements ensure that only information "potentially relevant" to the defense need be brought by the custodian of the officer's records to the court for its examination in chambers. (*People v. Mooc, supra,* 26 Cal.4th at p. 1216; *Santa Cruz, supra,* 49 Cal.3d at p. 84.)

Counsel's affidavit must also describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police

report. In *People v. Hustead, supra,* 74 Cal.App.4th 410, a defendant facing a charge of felony evasion of arrest brought after a high-speed automobile chase sought *Pitchess* discovery of whether the pursuing officer had "a history of misstating or fabricating facts" in police reports. (*Hustead,* at p. 416.) In support of the motion, the defense declaration denied that the defendant had driven in the way or along the route described by the officer. (*Id.* at p. 417.) Presiding Justice Ardaiz, writing for the Court of Appeal in *Hustead,* concluded that the defendant had met his burden of making "an initial showing that the information he is seeking is material to the case at hand." (*Id.* at p. 416.) In other words, defense counsel's declaration in *Hustead* made allegations sufficient to "establish a plausible factual foundation" for a defense that the defendant did not drive in the fashion described in the police report and that the officer's report was untrue. (*Id.* at p. 417.)

 In other cases, the trial court hearing a *Pitchess* motion will have before it defense counsel's affidavit, and in addition a police report, witness statements, or other pertinent documents. The court then determines whether defendant's averments, "[v]iewed in conjunction with the police reports" and any other documents, suffice to "establish a plausible factual foundation" for the alleged officer misconduct and to "articulate a valid theory as to how the information sought might be admissible" at trial. (*Santa Cruz, supra,* 49 Cal.3d at p. 86.) Although a *Pitchess* motion is obviously strengthened by a witness account corroborating the occurrence of officer misconduct, such corroboration is not required. What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. (*Santa Cruz, supra,* 49 Cal.3d at p. 86; *Haggerty v. Superior Court, supra,* 117 Cal.App.4th at p. 1087.)

A *Pitchess* motion need not, however, provide a motive for the alleged officer misconduct. We do not require the prosecutor to prove motive at trial in order to obtain a conviction. (CALJIC No. 2.51.) It would be anomalous to require a criminal defendant to do so in order to obtain discovery. Moreover, because most defendants will only be able to postulate an officer's motive for misconduct, to require every defendant to demonstrate a motive would require most of them "to allege with particularity the very information" they seek to discover. (*People v. Memro, supra,* 38 Cal.3d at p. 684.) Imposing a motive requirement would be contrary to the principles of discovery and would, in most instances, require defense counsel to engage in rank speculation.

The question remaining is this: What degree or quantity of justification must the moving party offer to establish a plausible factual foundation for the claim of officer misconduct? Here, the Court of Appeal concluded that to be plausible a factual foundation must be reasonably probable or apparently

credible and not merely possible. In so doing, the Court of Appeal imposed a greater burden on the party seeking *Pitchess* discovery than required by our prior cases or the statutory scheme. To require a criminal defendant to present a *credible* or *believable* factual account of, or a motive for, police misconduct suggests that the trial court's task in assessing a *Pitchess* motion is to weigh or assess the evidence. It is not. A trial court hearing a *Pitchess* motion normally has before it only those documents submitted by the parties, plus whatever factual representations counsel may make in arguing the motion. The trial court does not determine whether a defendant's version of events, with or without corroborating collateral evidence, is persuasive—a task that in many cases would be tantamount to determining whether the defendant is probably innocent or probably guilty. (See *People v. Johnson, supra,* 118 Cal.App.4th at p. 304.)

Moreover, a credibility or persuasiveness standard at the *Pitchess* discovery stage would be inconsistent with the statutory language and with our previous decisions requiring only that defense counsel's affidavit or declaration supporting a defendant's *Pitchess* motion be made on information and belief. (§ 1043, subd. (b)(3); *People v. Mooc, supra,* 26 Cal.4th at p. 1226; *Santa Cruz, supra,* 49 Cal.3d at pp. 86–89; *Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 395 [123 Cal.Rptr.2d 99].) As we have previously noted, the legislative history of section 1043 shows that the "Legislature expressly considered and *rejected* a requirement" that counsel's affidavit be made on personal knowledge. (*Santa Cruz, supra,* 49 Cal.3d at pp. 88–89, original italics.) Because defense counsel would only rarely be present when the alleged officer misconduct occurred, counsel has little information to offer based on counsel's personal knowledge.

 What standard must a moving party meet to show a "plausible" factual foundation for the *Pitchess* discovery requested? We conclude that a plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges. A defendant must also show how the information sought could lead to or be evidence potentially admissible at trial. Such a showing "put[s] the court on notice" that the specified officer misconduct "will likely be an issue at trial." (*Santa Cruz, supra,* 49 Cal.3d at p. 86.) Once that burden is met, the defendant has shown materiality under section 1043.

 To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation. The court does that through the following

inquiry: Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial? If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, and states "upon reasonable belief that the governmental agency identified has the records or information from the records" (§ 1043, subd. (b)(3)), then the defendant has shown good cause for discovery and in-chambers review of potentially relevant personnel records of the police officer accused of misconduct against the defendant.

Here, defendant's version of events is plausible given the factual scenario described in defense counsel's declaration. The declaration asserted that the officers mistook defendant for the person who actually discarded the cocaine, and falsely accused him of having done so. The scenario described in defense counsel's declaration is internally consistent; it conflicts with the police report only in denying that defendant possessed any cocaine and that he was the one who discarded the rocks of cocaine found on the ground. Those denials form the basis of a defense to the charge of possessing cocaine for sale. Thus, defendant has outlined a defense raising the issue of the practice of the arresting officers to make false arrests, plant evidence, commit perjury, and falsify police reports or probable cause. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254] [overbroad discovery request is properly narrowed by the trial court to misconduct similar to that alleged]; *People v. Memro, supra,* 38 Cal.3d at pp. 681–683 ["evidence that the interrogating officers had a custom or habit of obtaining confessions by violence, force" or threats would be admissible to support a coerced confession claim].) Defendant has established the relevance of such information to his pending trial (see, e.g., *People v. Gill* (1997) 60 Cal.App.4th 743, 750 [70 Cal.Rptr.2d 369] [prior complaints that arresting officer fabricated probable cause and planted evidence were material to defense that drugs were planted on a defendant changed with drug possession]), and having advanced a basis for admitting it into evidence at trial, he has shown its materiality.

■ To summarize, defendant has established good cause for *Pitchess* discovery, entitling him to the trial court's in-chambers review of the arresting officers' personnel records relating to making false arrests, planting evidence, fabricating police reports or probable cause, and committing perjury. In other words, defendant has "satisfied the criteria for discovery under section 1043, subdivision (b)," thus entitling him to a determination of relevance under the provisions of section 1045. (*Santa Cruz, supra,* 49 Cal.3d at p. 93.) ■ Section 1045 requires in-chambers record review by the trial court, permits that court to issue an order protecting the officer against

"unnecessary annoyance, embarrassment or oppression" (subd. (d)), and requires the trial court to limit the use of any records that are disclosed. By doing so, the section maintains a balance between the officer's legitimate privacy interests and the criminal defendant's constitutionally guaranteed right to a fair trial. (*People v. Mooc, supra,* 26 Cal.4th at p. 1227.)

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court with directions to issue a writ of mandate consistent with the views we have expressed here.

George, C. J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Dissenting.—Defendant's arrest took place in a location known for "blatant use and sales of narcotics." Police arrived on the scene. They targeted defendant, and defendant began to run, the police in close pursuit. Then, according to defendant's *Pitchess*[1] affidavit, some unknown person spilled 42 rocks of cocaine at defendant's feet as he ran past. Defendant was arrested in possession of an empty baggie and $2.75. Nevertheless, his affidavit asserted he was in the area to *purchase*, not to *sell*, narcotics. Both the trial court and the Court of Appeal found defendant's story that someone else spilled the cocaine utterly unconvincing. And no wonder. When the lion culls the slowest, weakest, or unluckiest from the herd, the other gazelles run a safe distance and then return to grazing. No gazelle commits suicide by flinging itself in the lion's path. These behaviors are instinctive, and we encounter them in our everyday experiences. When freeway commuters who are traveling faster than the posted speed limit spot a police cruiser in their rearview mirrors, they slow inconspicuously, avoiding any sudden changes that might draw police attention. When the police flashers are activated and one commuter is pulled over, the others breathe a sigh of relief and gradually return to cruising speed. People no more than animals invite calamity when fate has already selected another victim.

The majority concedes that a defendant must set forth a "plausible factual foundation" (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 86 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*)) to support a discovery motion under Evidence Code section 1043, subdivision (a), but the majority then deprives the term "plausible" of any substantive content by holding that a defendant satisfies this requirement so long as his version of the facts "could have occurred" and is "internally consistent." (Maj. opn., *ante,* at p. 1026.) "Plausible," however, implies something more than mere

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

internal consistency. (See, e.g., *People v. Hernandez* (2003) 30 Cal.4th 835, 869–870 [134 Cal.Rptr.2d 602, 69 P.3d 446] [using "plausible" to mean believable]; *People v. Cash* (2002) 28 Cal.4th 703, 724 [122 Cal.Rptr.2d 545, 50 P.3d 332] [using "plausible" to mean reasonably believable]; *People v. Kipp* (2001) 26 Cal.4th 1100, 1123–1124 [113 Cal.Rptr.2d 27, 33 P.3d 450] [using "plausible" to mean believable]; *People v. Trevino* (2001) 26 Cal.4th 237, 244 [109 Cal.Rptr.2d 567, 27 P.3d 283] [using "plausible" to mean persuasive]; *In re Cudjo* (1999) 20 Cal.4th 673, 695–696 [85 Cal.Rptr.2d 436, 977 P.2d 66] [using "plausible" to mean believable]; *People v. Wader* (1993) 5 Cal.4th 610, 645 [20 Cal.Rptr.2d 788, 854 P.2d 80] [using "plausible" to mean reasonably believable]; *People v. Jones* (1991) 53 Cal.3d 1115, 1138 [282 Cal.Rptr. 465, 811 P.2d 757] [same].) I admit that plausibility in the *Pitchess* context might mean something less than believable or persuasive. It certainly does not require circumstances that are probable or likely, and a trial judge ruling on a discovery motion should not predetermine issues that are ultimately for the trier of fact. The judge nevertheless must exercise some discretionary judgment, especially when, as here, the defendant's factual assertions are highly unlikely and, though related to matters within the personal knowledge of the defendant, they are made by his attorney on information and belief, rather than by the defendant directly, thereby shielding the defendant from perjury. At the very least, an assertion that runs counter to experience, nature, logic, and reason should be rejected—even if it is technically possible.

Defendant's affidavit claimed he was at the location to purchase narcotics. That claim is patently absurd. The majority concedes that 42 rocks of cocaine were strewn on the ground near where defendant had been running and that defendant was arrested holding an empty plastic baggie. Nevertheless, the majority credits defendant's unlikely assertion that someone else—the real seller—spilled the cocaine just as defendant happened to run past. (Maj. opn., *ante*, at p. 1024.) The majority also admits defendant had only $2.75 with which he could make his narcotics purchase. (*Ibid.*) More precisely, defendant had a $1 bill and seven quarters, and he possessed no paraphernalia for consuming narcotics. In the course of many years of studying criminal records, I have never encountered a case in which (a) a drug purchaser brought his own baggie, and (b) narcotics were sold on the street in $1 or $2 increments, making defendant's story very doubtful. The majority responds that defendant's lack of money just as readily undermines the conclusion that he was selling narcotics because, with so little money, he could not make change for his customers. (*Ibid.*) Anyone, however, who has walked around the neighborhood in which this court has its San Francisco office knows that narcotics are sold with a simple hand-off: narcotics for cash.

The majority's credulity with respect to defendant's unlikely assertions completely shifts the careful balance the Legislature struck between the rights of defendants to reasonable discovery and the privacy interests of police officers. I would hold that, because defendant failed to establish a "plausible factual foundation" for his discovery motion (*City of Santa Cruz, supra*, 49 Cal.3d at p. 86), the trial court was correct to deny the motion, and the Court of Appeal was also correct to deny the petition for a writ of mandate.

Accordingly, I dissent.

Baxter, J., concurred.