Filed 2/6/25  P. v. Bass CA4/2

*See dissenting opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082349 |
| v. | (Super.Ct.No. FSB21000434) |
| QUINN SHINDA BASS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Law Office of Brad Poore and Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Vincent P.

LaPietra and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and

Respondent.

A jury found defendant and appellant Quinn S. Bass guilty on one count of

resisting an executive officer (Pen. Code,[1] § 69) and one count of resisting arrest (§ 148,

subd. (a)). He argues the trial court erred by denying, without review of documents, his

pretrial motion for discovery of the personnel files of the arresting officers under *Pitchess*

*v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We disagree and affirm defendant's

convictions in all respects.

FACTS

Bass was tried on offenses arising from two separate events, one in 2019, the other

in 2021. Only the offenses from 2019 are relevant to this appeal. Bass's motion did not

set forth any summary of the facts surrounding the circumstances of his arrest. The

prosecution did provide a summary of the facts in its opposition to defendant's motion for

pretrial discovery, which we summarize below.[2]

According to the prosecution, on March 29, 2019, two San Bernardino County

deputy sheriffs were on patrol together in an unmarked vehicle. They stopped a car they

---

[1] Undesignated statutory references are to the Penal Code.

[2] The facts were taken from a report prepared by one of the deputies at the scene of defendant's arrest.{CT 230-231}

2

suspected of window tint and license plate violations.[3] Bass was driving that car, with his wife in the front passenger seat.

When the deputies turned on their emergency lights to pull the car over, it instead sped up, then turned "abruptly" into a parking lot and parked. The deputies stopped behind it. When the deputies approached the car, one on each side, the encounter was immediately contentious. Bass failed to comply with the deputies' instructions and, instead, began reaching around the car, locking the doors on his side of the car, and telling his wife to lock the doors on her side. When Bass reached towards the glove box, the deputy on the passenger's side opened the door and physically prevented him from doing so.

Bass eventually opened his door and stepped out, but he did not comply with instructions to face away from the deputy and place his hands behind his back. With some difficulty, the deputies got control over Bass's hands and placed him in handcuffs. Even after he was handcuffed, however, he continued to try to pull away and fight the deputies. As the deputies tried to put Bass in the back of their patrol car, Bass and one of the deputies fell; and the deputy suffered a dislocated shoulder. One of the deputies used pepper spray, in addition to physical force, to attempt to "gain compliance."[4]

---

[3] The facts asserted in the People's opposition to Bass's *Pitchess* motion also stated the deputies saw the car "executing an illegal turn in front of them." At trial, the deputies testified to only the suspected window tint and license plate violations as the basis for the traffic stop. The discrepancy does not matter to our analysis.

[4] The facts provided by the People in their opposition did not come by way of declaration or affidavit. Thus, this motion contained no declaration or affidavit that set forth the facts of the alleged detention and arrest.

In April 2019, the People filed a felony complaint against Bass, charging him with one count of resisting an executive officer (§ 69). In August 2019, Bass, representing himself, filed the *Pitchess* motion at issue here. Bass sought discovery of relevant materials from the personnel files of the deputies who arrested him.[5]

The trial court denied Bass's motion. The court noted that no police report was attached to the motion, so it was "only aware" of the "summary" description provided by the parties. It found Bass had not articulated a "plausible factual scenario" that was an "alternative to what the police have said has happened." The court stated Bass was required to show something "different . . . from just a flat-out denial" and found he had not met that standard.

The charges against Bass were later amended. He was tried on two counts of resisting an executive officer (§ 69), allegedly committed on March 29, 2019 (counts 4, 5); as well as two additional counts of the same offense (counts 1 and 3), allegedly committed on January 29, 2021; and one count of battery on a peace officer (§ 243, subd. (c)(2), count 2) on the latter date. The jury acquitted Bass of counts 1 through 3, as well as an alleged enhancement of count 4 for personally inflicting great bodily injury. (§ 12022.7, subd. (b).) The jury found Bass guilty of count 4, but, on count 5, found him guilty of the lesser offense of resisting arrest. (§ 148, subd. (a)(1).) The trial court

---

[5] The motion also requested documents from the personnel file of the San Bernardino County Sheriff. On appeal, Bass has not challenged that part of the denial of his motion.

4

sentenced Bass to two years of formal probation, with conditions that included 270 days in county jail, eligible to be served on the weekend or on work release.

DISCUSSION

In order "[t]o initiate discovery [of information in the personnel files of police officers], [a] defendant must file a motion supported by *affidavits* showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue."[6] (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019, italics added, quoting Evid. Code, § 1043, subd. (b)(3).). Specifically, "[w]hat the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Id.* at p. 1025.)

"An affidavit is a written declaration under oath, made without notice to the adverse party." (Code Civ. Proc., § 2003). "An affidavit to be used before any court, judge, or officer of this state may be taken before any officer authorized to administer oaths." (Code Civ. Proc., § 2012). Defendant's motion does not contain an affidavit taken before a person authorized to administer oaths. Although section 1043 (*Pitchess* statute) referenced above refers to *affidavits*, California law provides that matters that require affidavits may also be "supported, evidenced, established, or proved" by a declaration which is signed by the declarant and "states the date and place of execution . . . ." (Code Civ. Proc., § 2015.5).

---

[6] All further unspecified statutory references are to the Evidence Code.

5

Thus, in order to make the preliminary showing necessary to require the trial court to conduct an in camera hearing, a defendant must submit a declaration or affidavit demonstrating good cause for the discovery. Where defendant's purported factual scenario does not contain such declaration or affidavit, it is legally incompetent to prove anything and cannot establish good cause for the discovery requested. (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1019 [The defendant's motion must be supported "by affidavits showing 'good cause for the discovery . . . .' "])

"Generally, a trial court's ruling on a *Pitchess* motion is reviewed for abuse of discretion." (*Banuelos v. Superior Court* (2024) 106 Cal.App.5th 542, 548.) But where a "*Pitchess* ruling turns on a question of law, our review is de novo." (*Ibid*.) The defendant's purported declaration in this case is legally invalid. A valid declaration must state that it is certified or declared by the defendant to be true under penalty of perjury and must be signed by the defendant setting forth the date and place of its execution. (Code Civ. Proc., § 2015.5). Defendant's motion does meet these requirements.

Defendant's motion does not contain a separate affidavit or declaration. Defendant's motion consists of one document which, *in pertinent part*, contains a notice of motion; a purported "DECLARATION OF PETITIONER/COUNSEL"{CT 161}; a recitation of article I sections 1, 8, 16, 19 of the California Constitution; a one-paragraph statement of relevant facts; a one-paragraph memorandum of points and authorities; an argument section; a conclusion; and a prayer.

In the declaration section, there is no reference to defendant's statement being true and correct under penalty of perjury. In the conclusion section, it states, "I declare under

6

the penalty of perjury the foregoing to be true and correct."{CT 169}  At that point, there is no signature to correspond with that statement.  In the prayer section, it says, "I pray the Court honors Petitioner's unalienable rights, protected by the Constitution of California of 1849 and the organic U. S. Constitution."{CT 169}  Thereafter, it is dated August 3, 2019, and signed "Q. Bass UCC 1-308 W.O.P. Without United States/ Without Recourse/ Sui Juris."{CT 169}  A review of the motion reveals that it contains no valid declaration.  (Code Civ. Proc., § 2015.5 [declaration must state "the date and place of execution . . . ."])  There is unquestionably no place of execution stated anywhere in the document.[7]

Here, the People argue that the declaration was insufficient to make the showing that defendant is entitled to an in camera hearing.  We agree.  Without a legally sufficient declaration, the defendant cannot establish, and has not established, good cause for the discovery requested.  "[P]olice personnel records are confidential even vis-à-vis the prosecution, and therefore 'prosecutors, as well as defendants, must comply with the *Pitchess* procedures if they seek information from confidential personnel records.' " (*Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, 772-773.)

---

[7] Further, it is not entirely clear whether the defendant has placed a lawful signature on his motion.  A signature includes any mark or sign placed on a writing with the intent to execute or authenticate it.  (*Century Bank v. St. Paul Fire & Marine Ins. Co.*(1971) 4 Cal. 3d 319, 327)  "The signature indicates the intent of the signing party to be bound by the document."  (*Ibid.*)  According to defendant's motion, his name is Quinn Shinda Bass.  He signed the motion, "Q. Bass UCC 1-308 W.O.P. Without United States/ Without Recourse/ Sui Juris."  Although, we discern no relevance of the Uniform Commercial Code in this context, defendant appears to be limiting his intent to be bound by the document by his reference to his signature being "W.O.P.," "[w]ithout recourse," and "[w]ithout United States."

Although the trial court's ruling was based on the substantive insufficiency of the affidavit rather than the legal infirmity we describe, "[w]e may affirm [a court's] ruling if it is correct on any theory, even if the trial court's reasoning was incorrect."[8] (*People v. Hall* (2020) 57 Cal.App.5th 946, 952.) Defendant's failure to comply with section 1043 renders defendant's purported declaration legally incompetent and, thus, insufficient to establish the requisite showing required to compel the court to conduct an in camera review of the police personnel records. Defendant's failure to comply with section 1043's requirements is more than just a procedural irregularity. Defendant's motion simply does not contain what the legislature requires for a party to obtain confidential police records.

Further, to the extent the defendant was requesting complaints of excessive force,[9] the trial court was correct in denying the motion as defendant failed to attach a copy of the police report as required for such motions where there is a claim of excessive force. (§ 1046; see *County of L.A. v. Superior Court*) (1990) 219 Cal.App.3d 1605, 1610 [Failure to use the procedures set forth in the Evidence Code for discovery of police officer records supports the determination that defendant is not entitled to the items requested.])

---

[8] As we discuss hereafter, we also agree with the trial court's determination that defendant's motion was substantively insufficient.

[9] Defendant's motion references excessive force on multiple occasions. For example, in defendant's reply brief in the trial court, defendant says that he and his wife were forced out of the car by pepper spray and experienced "excessive twisting of right wrist."{CT 271}

Apart from the legal and procedural irregularities we describe, we find the factual scenario presented by the defendant insufficient to establish good cause for the discovery requested. "What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at. p. 1025.)

Under the section of defendant's motion entitled "DECLARATION OF PETITIONER/COUNSEL," defendant writes:[10]

"The Petitioner's unalienable rights; protected by, the organic United States Constitution of 1849 . . . were violated by SAN BERNARDINO COUNTY SHERIFF DEPUTIES. SGT. CRAIG, KELLY #B5842, AND DEP. REVELES #C9640, RESPONDEAT SUPERIOR on March 29, 2019 on or around 5pm.

    a. SAN BERNARDINO POLICE DEPT., RESPONDEAT SUPERIOR WERE CONDUCTING A SMASH/GANG SWEEP THAT SAN BERNARDINO COUNTY SHERIFF DEPUTIES, RESPONDEAT SUPERIOR took part in; furthermore,{CT 161}

    b. Agents made contact with NO PROBABLE CAUSE (No emergency, No injured party, No signed warrant by a judge specifying what person(s) and/or property to be searched, and/or seized."

The next reference to facts falls under a section labeled "II. STATEMENT OF RELEVANT FACTS." In that section, the motion states, "Petitioner Bass, Quinn D.B.A.

---

**10** Defendant's motion and reply are found at pages 158-169 and 269-272, respectively, of the Clerk's transcript.

QUINN S. BASS (Hereafter "Bass, Quinn) was arrested by San Bernardino County Sheriff Deputies for Felony PC 69 Resisting Arrest with no initial charge and/or probable cause (no injured party, no emergency, no signed warrant issued from a judge) on March 29, 2019."[11]

In the "Argument" section, defendant makes the following statement:

"In this case, the Deputies have put forth one version of what happened, a version that would support probable cause. The petitioner contends that something different happened. In the petitioner's scenario, there was no emergency, no injured party, and no warrant signed by a judge specifying the specific place to be searched and/or property and person to be seized; furthermore, probable cause would not have been established by the Deputies." Defendant goes on to argue that "[e]vidence of complaints against the Deputies of falsifying probable cause or facts can be used to impeach the officer's credibility."{CT 166-167}

In Defendant's reply brief, he adds the following:

"Take further Notice that at no point did the DEPUTIES make contact while private automobile was moving. Private Automobile was stationary, and at no point was unmarked car flashing emergency lights during contact. DEPUTIES forced my wife and I out of the car at gunpoint; furthermore, being injured by DEP. Reveles by pepper spray and excessive twisting of right wrist. Along with being injured a third time by an

---

[11] This language is repeated again immediately under this paragraph in a section entitled "MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY DISCOVERY (PITCHESS/BRADY)."

unnamed Deputy, after being falsely detained with no probable cause. . . . Before being booked . . . I was admitted in Arrowhead Regional Hospital with a diagnosis of Sprained Right wrist and Pepper Sprayed eyes."{CT 271-272}

Later, defendant writes: "[m]y wife and I were parked in our private automobile. How is that not explaining what we were doing at the time of contact and how is that not adequate in supporting my own actions?"[12]

The purported factual scenario does not meet the standards required to compel an evidentiary hearing even under the relatively relaxed standards used to determine good cause to compel *Pitchess* discovery. (See *Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1016). "To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation. The court does that through the following inquiry: Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial?" (*Id*. at pp. 1026-1027)

---

[12] The reply brief suffers from the same procedural irregularities as the original motion. It is legally incompetent under Code of Civil Procedure section 2015.15 and fails to comply with section 1043 to the extent it seeks complaints of excessive force.

11

The defendant's factual showing is insufficient because it is incomplete and he fails to "present a factual account of the scope of the alleged police misconduct, and does not explain his own actions in a manner that adequately supports his defense." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1317; see *People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1341.){Fourth Dist., Div. Two}

Defendant's purported factual scenario is wholly inadequate. Defendant does not articulate factually what it is that the officers did and what he was doing near the time of the arrest.[13] Defendant says, "the Deputies have put forth one version of what happened, a version that would support probable cause."{CT 166} However, defendant does not clearly inform us in his motion of his view of the officers' actions. Nor does he provide the officers' version of the events. Defendant then says, "The petitioner contends that something different happened. In the petitioner's scenario, there was no emergency, no injured party, and no warrant signed by a judge specifying the specific place to be searched and/or property and person to be seized; furthermore, probable cause would not have been established by the Deputies."{CT 166-167} These conclusory statements are of no assistance in informing the court of defendant's plausible factual scenario.

Defendant goes on to say "that at no point did the DEPUTIES make contact while private automobile was moving. Private Automobile was stationary, and at no point was

---

[13] It is the defendant who has the burden of setting forth a plausible specific factual scenario of the alleged police conduct. Therefore, we look to the factual scenario set forth by the defendant, not the officers, to determine if defendant's factual scenario is plausible. Although we may utilize the police reports in determining the plausibility of defendant's factual scenario, we look to defendant to explain his alternative version of the facts creating the need for the discovery.

unmarked car flashing emergency lights during contact."{CT 271}  Defendant does not indicate whose private vehicle he is referring to or whether or not he was even in it. Defendant speaks of the private vehicle in the third person.

Later, defendant writes:  "[m]y wife and I were parked in our private automobile. How is that not explaining what we were doing at the time of contact and how is that not adequate in supporting my own actions?"{CT 272}  Again, defendant's vague references do not clearly set forth a specific factual scenario.

As explained in *Thompson*, *Sanderson*, *and Warrick*, defendant's motion must be factually specific and tailored to support the proposed defense.  Defendant does not describe how long he had been at the location of the detention.  Nor does he state whether he had been driving and stopped immediately before the officers approached his vehicle. Defendant does not explain whether or not the officers asked him to exit his vehicle. Further, defendant does not explain whether he complied or refused to comply with the officers' directions.  Defendant does not explain his own actions in a manner that supports his defense.  Defendant's failure to clearly set forth the officers' actions and his own actions makes it impossible for us to know whether defendant has a plausible alternative version of events.

We recognize that the factual scenario can be based on a denial of the official version of events.  "That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report."  (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at pp. 1024-1025.)  However, a denial will not always suffice to meet the defendant's burden.  (*People v. Thompson*, *supra*, 141 Cal.App.4th at p. 1317;

13

see *People v. Sanderson*, *supra*, 181 Cal.App.4th 1340-1341.)  If a simple denial were always sufficient, the specific factual scenario requirement would be of no effect.  Every defendant would be entitled to discovery by simply denying the allegations in the police reports.  Here, defendant does not state what is in the official police reports, let alone deny those alleged facts.

Finally, defendant seeks the confidential personnel records of Deputy Clotworthy and Sgt. Smith in his motion;[14] however, defendant does not allege what each officer purportedly did.  "[A] showing of good cause must be based on a discovery request which is tailored to the specific officer misconduct that is alleged."  (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021.)  Each officer's records are confidential.  "The Penal Code provisions designate peace officer personnel records as confidential, while the Evidence Code sections provide the specific procedures which must be followed to obtain discovery of peace officer personnel records."  (*Id*. at p. 1019).  If defendant is alleging that a particular officer fabricated a police report, he needs to say so and point to the particular officer in question.  Defendant cannot obtain the confidential records of an officer without some plausible showing of misconduct by that officer.  Defendant fails to comply with this requirement.  We see no abuse of discretion in the trial court's denial of defendant's *Pitchess* motion.  The trial court did not exercise "its discretion in an arbitrary, capricious, or patently absurd manner that

---

[14]  In the body of the motion, defendant also references Deputy Reveles.

14

resulted in a manifest miscarriage of justice."  (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

I concur:

CODRINGTON
Acting P. J.

[*People v. Bass*, E082349]

RAPHAEL, J., dissenting.

I respectfully dissent from the majority's conclusion that the trial court correctly denied Quinn S. Bass's pretrial motion for discovery under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

I agree with the majority that Bass's motion was procedurally irregular in several ways. A *Pitchess* motion must include "[a]ffidavits showing good cause for the discovery or disclosure sought." (Evid. Code, § 1043, subd. (b)(3).) Lacking the benefit of counsel, Bass did not file a separate affidavit along with his motion, only a single document entitled a "Notice and Notice of Motion for Preliminary Discovery (Pitchess/Brady)," a section of which is designated "Declaration of Petitioner/Counsel." The document is signed by Bass, and declares "under the penalty of perjury the foregoing to be true and correct," but in the "Conclusion" paragraph rather than immediately before the signature. His reply brief, entitled "Notice and Declaration of Affidavit of Rebuttal Against County's Opposition for Preliminary Discovery (Pitchess/Brady)," is also signed "under the penalty of perjury," although again the signature is separate from the quoted language. Bass appended to his signatures as "Q. Bass" some extra verbiage that may suggest he is an adherent of the "sovereign citizen" movement. And although the motion and reply both indicate an address in San Bernardino, California, it is a P.O. box rather than a place of execution.

1

I disagree, however, that these irregularities are fatal to Bass's *Pitchess* motion.[1]

It is certainly best to follow the practice of most attorneys and make the supporting affidavit a separate document, attached to the *Pitchess* motion rather than incorporated into it. But the statute requires that a *Pitchess* motion "include" supporting affidavits, not that they take any particular form. (Evid. Code, § 1043, subd. (b).) In the same vein, "[Code of Civil Procedure] Section 2015.5 does not require the declaration under penalty of perjury to appear at the end of the document, although the form suggested in the section contemplates that this is the ordinary placement of the declaration, and it is no doubt the better practice." (*People v. Pierce* (1967) 66 Cal.2d 53, 59.) It also is clear that the extra verbiage Bass appended to his signature would not shield him from a perjury prosecution, as courts have consistently rejected such "sovereign citizen" arguments. So that verbiage should not invalidate his signature for purposes of this motion. Because the People did not object in the trial court that Bass's declaration failed to state where it was executed, which would have allowed Bass to cure that defect, I would deem the point waived. (See *People v. United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895, 896, fn. 2 [declaration in support of bond forfeiture motion lacked date and place of execution, rendering them "clearly insufficient" under Code of Civil

---

[1] I agree with the majority that, to the extent Bass requested discovery of complaints of excessive force, the motion was properly denied because he failed to include a copy of the police report. (Evid. Code, § 1046.) That requirement does not apply, however, to the apparent focus of the motion, which was any instances of dishonest conduct (" . . . fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search and seizure, false arrest, perjury, dishonesty, writing false police reports, false and misleading internal reports including but not limited to false overtime or medical reports . . .")

Procedure Section 2015.5, but "no objection on that ground was made in the trial court and . . . it could easily have been cured," so court of appeal "deem[ed] the point waived."]; accord *Guardianship of Stephen G.* (1995) 40 Cal.App.4th 1418, 1422 ["'An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not, presented to the lower court by some appropriate method,'"], quoting 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.)

Under our Supreme Court's precedent, I also disagree with the majority's finding that Bass presented a factual scenario insufficient to establish good cause for discovery of evidence of dishonest behavior in the arresting officer's personnel files.

"Good cause for discovery exists when the defendant shows both "'materiality'" to the subject matter of the pending litigation and "a reasonable belief" that the agency has the type of information sought.'" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016; Evid. Code, § 1043, subd. (b)(3).) "A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.'" *Warrick*, *supra*, at p. 1016.) Thus, the defendant "need demonstrate only 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events.'" (*People v. Gaines* (2009) 46 Cal.4th 172, 182 (*Gaines*).) The defendant's factual showing, "depending on the circumstances of the case, may consist of a denial of the

3

facts asserted in the police report." (*Warrick*, at pp. 1024-1025.) The defendant's factual scenario must be "plausible" in the sense the asserted officer misconduct "might or could have occurred." (*Id.* at p. 1026.) The question is *not* whether the defendant's account is credible or believable, but only whether it is "both internally consistent and supports the defense proposed to the charges." (*Ibid.*; see *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 74 [characterizing required *Pitchess* showing as "minimal"].) The showing required for a *Pitchess* motion need not be based on "personal knowledge" of facts, as it is often from a lawyer simply articulating a scenario where the information could be used at trial. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85-86.)

Bass's *Pitchess* motion is not drafted with the clarity that a good lawyer would bring. Plainly enough, however, he articulated not just a flat denial but a specific factual scenario that contradicted the officers' version of events. According to Bass, he was parked, not driving, before the officers contacted him, so the deputies were lying about observing traffic violations and had no other justification for detaining him. The deputies then forced Bass and his wife out of their car, rather than respect their decision not to roll down their windows for a conversation. (See *People v. Flores* (2024) 15 Cal.5th 1032, 1050 (*Flores*) [in the absence of reasonable suspicion by police the defendant was doing something illegal, the defendant "had the right to decline further interaction with the officers and . . . the officers had no authority to compel him to do otherwise"].)

To be sure, Bass was incorrect to phrase his argument as implicating the deputies' lack of "probable cause," rather than reasonable suspicion. (See *Flores*, *supra*, 15

4

Cal.5th at p. 1041 [discussing reasonable suspicion standard for investigative detentions].) And Bass could conceivably have provided more detail about exactly who did what, when, and to whom, as the majority opinion faults him for not doing. (Maj. opn., *ante*, at p. 13.) But an illegal traffic stop allegation is not complicated. In my view, the point Bass tried to articulate was discernible, and it does not take much detail to understand its merit as a predicate for *Pitchess* review. There is nothing internally inconsistent or otherwise implausible about the version of the facts Bass described. (See *Warrick*, *supra*, 35 Cal.4th at p. 1023.) And at this stage, the issue was *not* whether Bass's version of events is persuasive or credible or probable, but only whether it "might or could have occurred." (*Id.* at p. 1026; *Gaines*, *supra*, 46 Cal.4th at p. 182 ["a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive"].)

Further, if accepted by the trier of fact, Bass's version of events would support a valid defense to the charged offense. The prosecution alleged Bass violated Penal Code section 69 by using force or violence to resist a peace officer "in the performance of his duty"—as distinguished from an attempt to deter the officer from performing a duty in the future—so an element of the offense is that the officer was "acting lawfully at the time of the offense." (*People v. Smith* (2013) 57 Cal.4th 232, 241 (*Smith*).) The same element is required to establish a violation of Penal Code section 148, subdivision (a)(1), the lesser offense Bass was found guilty of committing as to count 5. (See *Smith*, at p. 242.) "[A]n officer is not lawfully performing her duties when she *detains an individual*

5

*without reasonable suspicion* or arrests an individual without probable cause.'" (*Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 819.)

Of course, whether the arresting officers were acting lawfully is not an element of every charge that could apply to Bass's actions as alleged by the prosecution. (E.g., *People v. Brown* (2016) 245 Cal.App.4th 140, 153 [defendant who used unreasonable force in resisting officers' improper or excessive use of force could be convicted of simple assault].) What matters here is whether Bass's account would support a defense to resisting an executive officer in violation of Penal Code section 69. It would.

I would therefore find the trial court erred by denying Bass's *Pitchess* motion without conducting an in camera hearing to determine whether there was any discoverable information about dishonest conduct in the arresting deputies' personnel files. I would conditionally reverse the judgment and remand to the trial court to conduct that in camera hearing and then to proceed as appropriate depending on whether discoverable information was found.

RAPHAEL                     

J.

6