Filed 6/18/14  P. v. Bueno CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN MARK BUENO,<br><br>        Defendant and Appellant. | A132986<br><br>(Solano County<br>Super. Ct. No. FCR270642) |

Good cause lacking, defendant's petition for rehearing is denied.  The opinion filed herein on May 22, 2014 is ordered modified as follows.  On page 7, a footnote is added, number 3, with all subsequent footnotes being renumbered.  The new footnote will follow the parenthetic citation to (*People v. Earp* (1999) 20 Cal.4th 826, 893.) and will read:

In a petition for rehearing, defendant contends that the waiver rule set forth in *Earp* does not apply to evidentiary rulings.  In *People v. Partida* (2005) 37 Cal.4th 428, 435 (*Partida*), our Supreme Court made an exception to the general rule that a defendant may not argue on appeal that the trial court should have excluded the evidence for a reason not asserted at trial.  (*Partida, supra*, 37 Cal.4th at pp. 433–434.)  The *Partida* court recognized that a defendant's new constitutional arguments are not forfeited on appeal if "the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional *legal consequence* of violating the Constitution."  (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)  We need not decide whether defendant's constitutional challenges on appeal to the court's evidentiary ruling invoked new facts or legal standards not considered in the trial court because we have concluded that any error in not admitting the impeachment evidence was harmless beyond a reasonable doubt, and that the court's admonition to the jury mitigated the court's comments that defense

counsel intended to mislead the jury.  Defendant's arguments that the court's ruling infringed his rights to confront witnesses and to due process fail on the merits.

This modification does not effect a change in the judgment.


Dated:  _____       Signed:  _____

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN MARK BUENO,<br><br>    Defendant and Appellant. | A132986<br><br>(Solano County<br>Super. Ct. No. FCR270642) |

John Mark Bueno appeals from a judgment upon a jury verdict finding him guilty of assault on a peace officer with a semiautomatic firearm (Pen. Code,[1] § 245, subd. (d)(2)); possession of a firearm by a felon (§ 12021, subd. (a)(1)); possession of a concealed firearm on the person of a felon (§ 12025, subd. (a)(2)); carrying a loaded firearm (§ 12031, subd. (a)(1); unlawful possession of ammunition (§ 12316, subd. (b)(1)); resisting a peace officer (§ 148, subd. (a)(1), and giving false information to a police officer (§ 148.9, subd. (a)). The jury also found true the allegation that defendant personally used a firearm within the meaning of section 12022.5, subdivisions (a) and (d) in the commission of the assault offense; that he was convicted of a prior felony within the meaning of section 12031, subdivision (a)(2)(A) in connection with the carrying a loaded firearm offense; and that he personally used a firearm within the meaning of section 12022, subdivision (a)(1) during the unlawful possession of ammunition count. Defendant contends that the trial court's ruling precluding his attempt to impeach Officer

_____

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

1

Shephard with his preliminary hearing testimony deprived him of a fair trial. He also argues that the trial court abused its discretion in denying his *Pitchess*[2] motion. We affirm.

## I. FACTS

At approximately 10:00 a.m. on September 25, 2009, Officer Michael Shephard was on patrol duty in Suisun. Shephard, Sergeant Stec, and Officer Sousa were preparing to conduct probation searches and met at the Bonfaire Market to plan their day. While there, Shephard noticed defendant drive into the parking lot with two passengers and look toward the officers. Defendant was driving a dark-colored Honda. One of the passengers went into the market. Defendant got out of the car and circled it while looking back at the officers. After defendant exited from the parking lot, Shephard followed in his patrol car.

Within a mile from the market, Shephard noticed that the speed of defendant's car was accelerating. He also saw that the female passenger in the car was not wearing her seatbelt properly. Shephard continued to follow defendant's car which was then travelling beyond the speed limit. Defendant then suddenly pulled over and stopped the car. Shephard initiated a traffic stop. He approached the driver's side and informed defendant that he had stopped him for speeding. Shephard could smell the odor of marijuana coming from the car.

Defendant became argumentative and said that he was not speeding. He did not have a driver's license and could not provide a driver's license number. He gave his date of birth and said his name was Joshua Bueno, but misspelled Joshua. Shephard requested a DMV check and the radio dispatcher told him there was no match based on the information provided. Shephard returned to defendant's car and asked him to step out of the vehicle. Shephard told defendant he was going to do a patsearch for weapons. Defendant was again argumentative and tried to flee. Shephard grabbed defendant's arm and tried to hold on to him but defendant continued to resist. Officer Sousa, who had

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

responded to the scene, assisted Shephard. They were able to take control of defendant and directed him to the ground. Shephard handcuffed defendant, placing defendant's hands behind his back, and proceeded to patsearch him. Shephard did not find any weapons on defendant. He placed defendant in the rear of the patrol car. Shephard and Sousa then conducted patsearches of the two passengers who were in the car.

Sergeant Stec, who was also on the scene, told Shephard that it looked like defendant was "slipping his cuffs," meaning that he had taken his arms under his legs and brought them back in front of him. Shephard immediately returned to his patrol car to investigate. He opened the back door of the car and found defendant in a hunched position. He reached in and grabbed defendant's right arm and tried to pull him out of the car. Defendant "very quickly" spun his legs so his feet came out of the door. Shephard still had a hold on defendant's arm; defendant's hands were between his legs. As defendant got out of the car, he raised his hands, and Shephard saw that defendant had something in them. He heard a gunshot at about the same time as Stec screamed, "Gun." Shephard pushed defendant's hands down and got behind him. He placed defendant in a bear hug and directed him to the ground. Stec assisted Shephard in getting defendant on the ground. The gun slid to the pavement.

## II. DISCUSSION

### A. Impeachment evidence

Defendant contends that Shephard gave conflicting testimony both at the preliminary hearing and at trial and that the trial court prevented him from impeaching Shephard about whether he grabbed defendant's hand rather than his arm when he pulled him out of the car. The trial court found that defense counsel was taking Shephard's testimony out of context and that Shephard had not testified that he grabbed defendant's hand. Consequently, the court did not allow the impeachment. Defendant argues that the court's ruling violated his right to present a defense. We disagree.

Defendant focuses on the following exchange during the preliminary hearing after Shephard had testified that he opened the rear passenger door of the patrol vehicle and grabbed defendant "probably by his right arm." "[MS. HARRISON (deputy district

3

attorney)]: How did you do that? [¶] [OFFICER SHEPHARD]: I opened the door and grabbed it. [¶] [MS. HARRISON]: So you reached in with your left arm? [¶] [OFFICER SHEPHARD]: I reached in, I believe, with my left hand and grabbed his arm, or maybe my right. [¶] [MS. HARRISON]: And what did you notice when you grabbed his right arm? [¶] [OFFICER SHEPHARD]: Nothing at first. He was hunched over like he didn't want me to see his hands or whatever, something like that, trying to conceal something, so I grabbed his *hand* and kind of pulled it out. He kicked his feet out of the car —" (Italics added.) Shephard proceeded to testify that he had touched defendant's right arm with his left hand, that defendant was in a hunched position, and that his hands were in front of him and he appeared to be concealing something.

At trial, Shephard testified that when he opened the door of the patrol car to check on defendant, he was hunched over, and Shephard reached in, grabbed defendant's arm, and tried to pull him out of the car. On cross-examination, defense counsel attempted to impeach Shephard with his preliminary hearing testimony in which he had stated that he had grabbed defendant's hand. The following colloquy occurred: "[MS. JOHNSON]: Okay. So you reached in and you grabbed him and pulled him to the opening of the door, right? [¶] [OFFICER SHEPHARD]: No. [¶] [MS. JOHNSON]: You did not reach in and grab him? [¶] [OFFICER SHEPHARD]: I reached in and grabbed him. [¶] [MS. JOHNSON]: Okay. [¶] [OFFICER SHEPHARD]: But I am not going to just pull him out because I don't know what's in his — I can't see his hands. [¶] [MS. JOHNSON]: Okay. Earlier you testified that you reached in and you grabbed his hand, and then you changed it to arm; do you recall that? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: Okay. But you actually did reach in and grab his hand, right? [¶] [OFFICER SHEPHARD]: No, I didn't grab his hand. I couldn't see his hands. [¶] [MS. JOHNSON]: Do you recall testifying at the prior hearing in May of 2010, that you did actually reach in and grab his hand? [¶] [OFFICER SHEPHARD]: I don't recall saying hand. I think I may have said forearm." Defense counsel then sought to impeach Shephard with his preliminary hearing testimony when he testified that he "grabbed [defendant's] hand and kind of pulled it out." The prosecutor objected that defense

4

counsel was misstating the testimony. The trial court agreed, noting that Shephard had testified that he had grabbed defendant's right arm, and that the line defense counsel was relying on was taken "completely out of context." The court remarked, "Ms. Johnson, he doesn't say that in this. I mean, we can read the whole transcript pages 30 and 31 for the jury I think, and let them decide what he is saying."

"[T]he trial court has discretion to exclude impeachment evidence, including a prior inconsistent statement, if it is collateral, cumulative, confusing, or misleading." (*People v. Price* (1991) 1 Cal.4th 324, 412; *People v. Douglas* (1990) 50 Cal.3d 468, 509.) Our reading of the preliminary hearing transcript comports with that of the trial court. Shephard testified consistently at the preliminary hearing that he had grabbed defendant's right arm, and that he could not see defendant's hands because defendant was hunched over trying to conceal something. After Shephard mistakenly testified on direct examination during the preliminary hearing that "he grabbed [defendant's] hand and kind of pulled it out," defense counsel tried to get Shephard to repeat that testimony on cross-examination. Thus, defense counsel questioned Shephard as follows: "[MS. JOHNSON]: So it was Mr. Bueno's right arm that was closest to the door that you opened, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: So when you reached in, his hands were together, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: They were handcuffed, right? [¶] [OFFICER SHEPHARD]: Yes. [¶] [MS. JOHNSON]: And you said that you grabbed his hands, right? [¶] [OFFICER SHEPHARD]: I believe I grabbed his arm. [¶] [MS. JOHNSON]: His arm? [¶] [OFFICER SHEPHARD]: I believe it was his forearm or — around his — probably his forearm, yeah. [¶] [MS. JOHNSON]: Okay. Grabbed his forearm, and the purpose of this was to get his hands out from between his legs. Is that what your purpose was? [¶] [OFFICER SHEPHARD]: The purpose was to see what was in his hands and at the same time remove him from the vehicle." A few questions later, there was another exchange on the same issue: "[MS. JOHNSON]: Yes. Were you pulling him towards the door? [¶] [OFFICER SHEPHARD]: No. I grabbed his hand, grabbed his forearm, and as I touched him, I believe his foot swung out. Then we — I think it was kind of in

5

unison that it came out of the door. [¶] [MS. JOHNSON]: Okay. You grabbed his right forearm and his left hand is coming with it? [¶] [OFFICER SHEPHARD]: I hope so. [¶] [MS. JOHNSON]: Because his hands are together, right? [¶] [OFFICER SHEPHARD]: Uh-huh. [¶] [THE COURT]: That is a 'yes?' [¶] [OFFICER SHEPHARD]: Yes."

Hence, a complete reading of Shephard's preliminary hearing testimony makes clear that Shephard consistently testified that he grabbed defendant's right arm or forearm to pull him out of the car. While Shephard made two statements indicating that he grabbed defendant's hand, he corrected himself and subsequently testified that he grabbed defendant's arm or forearm. Thus, the record as a whole shows that Shephard misspoke when he said he grabbed defendant's hand. On these facts, the trial court did not abuse its discretion in limiting defendant's attempt to impeach Shephard with his preliminary hearing testimony.

Even if the trial court erred in limiting the impeachment evidence, the error was harmless. The evidence showed that defendant was in a hunched position in the car, and that Shephard did not see his hands until defendant was out of the car and had fired the gun. Indeed, Shephard testified that defendant was trying to conceal something in his hands. Had the court allowed the impeachment where Shephard said "hand" instead of arm or forearm, it would not have changed the result because it was clear from Shephard's testimony that he did not see defendant's hands when he was attempting to remove defendant from the patrol car. Rather, the evidence showed that defendant's hunched position prevented Shephard from seeing defendant's hands and the concealed weapon they held. Any error in not allowing the impeachment was thus harmless beyond a reasonable doubt. (*Chapman v. California* (1978) 386 U.S. 18, 24.)

Defendant also asserts that the court's admonition to the jury the day following its exclusion of the impeachment evidence did not mitigate its comments that suggested defense counsel intended to mislead the jury.[3] He argues that the remarks violated his

---

[3] The court remarked, "Yesterday during the cross-examination of the first witness, when the witness was being asked about some previous testimony, the Court, at least [at] one point and I

6

right to present a defense, because the jury was left with the impression that there had been no prior inconsistent statements or that they were of little significance. Defendant did not make any objection on constitutional grounds to the court's earlier ruling excluding the evidence or to the court's admonition. The claim is therefore not preserved for appeal. (*People v. Earp* (1999) 20 Cal.4th 826, 893.) In any event, we must presume that the jury understood and followed the court's admonition. (See *People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Defendant further contends that the prosecutor elicited false testimony from Shephard, who testified that he never said he touched defendant's hand. Again, defendant failed to preserve this claim on appeal because he did not object to the alleged false testimony or prosecutorial misconduct at trial. (See *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1253.)

Defendant refers to a portion of the prosecutor's redirect examination of Shephard as false: "[MS. HARRISON]: So when counsel indicates that you . . . testified that you grabbed his hands and pulled his hands up, that is incorrect; you never testified to that; is that a fair statement? [¶] [SHEPHARD]: Yes." The prosecutor also asked, "So did you ever refer to touching the defendant's hands?" Shephard responded, "No."

Defendant contends that this testimony was false because Shephard testified that he had grabbed defendant's hand when he pulled him out of the car. As the trial court found, however, it was clear from reading Shephard's complete testimony at the preliminary hearing that Shephard misspoke when he said that he grabbed defendant's hand. Shephard consistently testified on both direct and cross-examination, that he could

might have said this twice, and I indicated to defense counsel that I felt that she was misleading the jury. [¶] Ladies and gentlemen, I'm going to direct you, first of all, to disregard those comments. I have given some thought to this. I do not — first of all, Ms. Johnson is an experienced attorney. She has an excellent reputation and I do not believe that she was intending to mislead the jury in any way and I want you to disregard the comment or comments that I made in that regard. [¶] I'm also going to remind you that nothing the Court — none of the Court's rulings or comments made during the course of the trial should in any way affect your decision about the facts. Your decision should be made based on the evidence alone and not from any inference you take from a comment made by the Court, so please keep that in mind, as well. With that we will continue on."

7

not see defendant's hands when he was in the patrol car because defendant was in a hunched position, and that he had grabbed defendant's right arm to pull him out of the car. To the extent that Shephard's testimony at trial was incorrect given the misstatement during his preliminary hearing testimony that he grabbed defendant's hand, even if the prosecutor's offer of Shephard's trial testimony could be considered misconduct, we cannot conclude that defendant was prejudiced. (See *People v. Green* (1980) 27 Cal.3d 1, 29 [prosecutorial misconduct requires reversal only when, viewing the record as a whole, it results in a miscarriage of justice].) The clear import of Shephard's testimony was that he could not see defendant's hands when he pulled him out of the car and that it was not until the gun fired that he realized that defendant was armed. In view of this evidence of defendant's guilt, defendant was not prejudiced by the prosecutor's offer of Shephard's testimony.

## B. *Pitchess* motion

Prior to trial, defendant made a *Pitchess* motion seeking to discover any of Shephard's personnel records that reflect any instances of misconduct. He argued that Shephard made false statements in his police report and at the preliminary hearing, and that any past complaints against Shephard were relevant to the issue of his credibility.

The Suisun City Police Department opposed the motion, arguing that defendant had not made the required showing that the information could not be obtained by less intrusive means, and that defendant had failed to demonstrate good cause for the discovery of the material sought. The trial court denied the motion, finding that defendant had not presented a plausible scenario of police misconduct, and that there was nothing in the affidavits presented that suggested that Shephard had been dishonest or misleading.

Defendant made a second motion pursuant to section 1054.1[4] to request discovery of two arrest reports of Darion Jamaal Thomas (the owner of the car defendant was

---

[4] Section 1054.1 sets forth the items the prosecuting attorney must disclose to the defendant if the items are within his or her possession or in the possession of the investigating agencies: (1) the names and addresses of the witnesses the prosecutor intends to call; (2) the statements of all

8

driving when he was arrested) and the statements of Shephard and the other officers who witnessed the incident which were made during the police department's internal investigation. The trial court denied the motion, finding that except for the statements of Shephard and the other officers, the prosecutor had complied with the motion. The court further ruled that the statements were part of the police department's internal affairs investigation and were within defendant's earlier *Pitchess* motion, which the court had already denied.

Defendant then filed a third motion pursuant to *Pitchess* again seeking the personnel records of Shephard and the other officers who witnessed the incident including the officers' statements made in the internal affairs investigation. The court held an in camera hearing on the motion. It found that the officers' original reports of the incident were consistent with their statements during the internal investigation and that there were no factual discrepancies noted in the report of the internal investigation. The court remarked that it would so inform defense counsel and the deputy district attorney. The clerk's minutes confirm the court's remarks. We must presume that the court informed the parties of its ruling. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) The "two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]"

---

defendants; (3) all relevant evidence seized or obtained as a result of the investigation of the charged offenses; (4) the existence of a felony conviction of any material witness; (5) any exculpatory evidence; and (6) relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial.

(*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.) The *Warrick* court explained that the affidavit "must propose a defense or defenses to the pending charges." (*Id*. at p. 1024.) The good cause showing "requires a defendant . . . to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Id*. at p. 1021.) The information which the defendant seeks must be described with some specificity to ensure that the request is "limited to instances of officer misconduct related to the misconduct asserted by the defendant." (*Ibid*.)

Moreover, the affidavit must "describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Warrick*, *supra*, 35 Cal.4th at pp. 1024–1025.) However, the factual scenario must be a "plausible scenario of officer misconduct," a scenario that "might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id*. at p. 1026.)

When the defendant establishes good cause for *Pitchess* discovery, he or she is entitled to the trial court's in-chambers review of the arresting officers' personnel records relating to the plausible scenario of officer misconduct. (*Warrick, supra*, 35 Cal.4th at p. 1027.) The purpose of the in-chambers review is to determine relevance under the provisions of Evidence Code section 1045. This review allows the court to issue orders protecting the officer or agency from "unnecessary annoyance, embarrassment or oppression." (*Id*., subd. (d).) These provisions strike a balance between the legitimate privacy interests of the officer and the defendant's right to a fair trial. (*Warrick*, *supra*, 35 Cal.4th at p. 1028.)

Relying on *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, defendant contends that the trial court should have ordered the disclosure of the officers' statements. In *Rezek*, the court held a defendant may obtain the statements of witnesses to the crime for which the defendant is charged even if the statements were obtained as a result of an

10

internal affairs investigation and placed in an officer's personnel file so long as the disclosure is not precluded by Evidence Code section 1045.[5] (*Id*. at pp. 642–643.)  The *Rezek* court remanded the matter to the trial court to conduct an in camera inspection of the relevant documents as provided by Evidence Code section 1045, subdivision (b), and to disclose any documents not precluded from disclosure by statute.  (*Id*. at pp. 644.)

Rezek is of no assistance to defendant.  Here, the trial court did conduct an in camera hearing to determine whether the discovery sought was relevant to defendant's trial.  The record reflects that the court found that the officers' statements of the incident were consistent with the police department's internal investigation and that the court would so inform the parties.  No error appears.

Defendant also argues that the court violated his right to due process because it should have granted his motion for discovery of the witness statements even without a *Pitchess* motion.  The courts, however, have consistently rejected this argument.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81–82 [the *Pitchess* procedure is codified by statute]; *Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 57 [*Pitchess* procedure is sole means by which discovery of confidential peace officer files can be obtained].)  The court did not violate due process by following the *Pitchess* procedure in reviewing defendant's discovery motions.  We have reviewed the court's rulings on defendants' three motions seeking the witness statements of the officers and have concluded that the court did not abuse its discretion in denying the motions.  (*People v. Rezek*, *supra*, 206 Cal.App.4th at p. 641 [*Pitchess* motion is within the wide discretion of the trial court].)

---

[5] Evidence Code section 1045, subdivision (a) provides that "[n]othing in this article shall be construed to affect the right of access to records of complaints, or investigation of complaints, or discipline imposed as a result of those investigations, concerning an event or transaction in which the peace officer or custodial officer . . . participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties, provided that information is relevant to the subject matter involved in the pending litigation."  Subdivision (b) of Evidence Code section 1045 sets forth the criteria for the court to consider in determining whether requested discovery is relevant including whether any complaints concerning conduct occurred more than five years before the event that is the subject of the litigation for which discovery is sought.

# III. DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

12