Filed 12/23/14  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>CALVIN JOHNSON,<br><br>    Defendant and Appellant. | C073854<br><br>(Super. Ct. No. CRF111747) |

A jury found defendant Calvin Johnson guilty of second degree robbery and assault with a deadly weapon.  The trial court sentenced defendant to three years in state prison.  On appeal, defendant contends the trial court erred in denying his *Pitchess*[1] motion to discover material contained in the personnel file of Davis Police Officer Mike

---

[1]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

Munoz.  He further contends, and the People concede, that the abstract of judgment should be corrected to reflect the court's award of presentence custody credits.

We shall order the abstract corrected to reflect defendant's presentence custody credits.  As modified, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Victim Amir Anjomshoaa posted an offer on Craigslist to sell an iPhone for $600.  On September 26, 2010, defendant called Anjomshoaa in response to the ad and offered to purchase the phone for $580.  The two agreed to meet that day in a Safeway parking lot near Anjomshoaa's house in Davis.  Anjomshoaa and defendant met in the parking lot as planned.  When Anjomshoaa showed defendant the phone, defendant tested it, said he liked it, and told Anjomshoaa to walk with him to his car to retrieve the money to pay for it.  The two men walked to a red Ford Mustang.  Defendant opened the passenger side door, got in, opened the glove box, and began "going through his stuff."  Anjomshoaa looked in the glove box and saw there was no money, then realized the car was running and there was someone behind the wheel.  Defendant yelled, "go" and tried to close the door.  Anjomshoaa used his arm to prevent the door from closing and held onto the handle just inside the door frame as the car started moving toward the parking lot exit.  Anjomshoaa held on as he ran with the car and called out for help.  He saw his charger and a USB cable on the ground but kept running.  Defendant, still in possession of the phone, told the driver to "keep going, keep going."  Anjomshoaa fell and was dragged by the car for approximately 300 feet, all the while telling defendant, "give me back my phone," and yelling, "call the cops, call the cops."

Eventually, Anjomshoaa let go of the car as it headed toward the exit of the parking lot.  Despite the fact that Anjomshoaa's legs were burned, he continued to chase after the car until bystanders stopped him.  The police arrived shortly thereafter.  Anjomshoaa was treated at the scene by emergency personnel and then taken to UC Davis Medical Center.  Anjomshoaa identified defendant at trial.

2

That same day, Ruben Ponce, his wife, Maria Ponce, and sons, Daniel Vega and Ruben Ponce, Jr., were eating lunch in their car, which was parked in the Safeway parking lot. Ruben, Maria, and Vega all heard Anjomshoaa screaming and saw him being dragged along by a red Mustang until he either fell or let go. Anjomshoaa gave chase, and the Ponces followed, until the Mustang drove out of the parking lot.

At some point prior to the Mustang exiting the parking lot, Vega saw someone toss a phone out of the car. The damaged phone was picked up by some kids, who put it next to a trash can. When Davis Police Officer David Martin responded to the scene, Vega directed him to the trash can where the phone defendant took from Anjomshoaa was found.

Whitney Brim-DeForest, her husband, Hamady Balde, and their two-year-old son were also in their car in the Safeway parking lot on September 26, 2010. Brim-DeForest saw a red Mustang go "whizzing past," dragging Anjomshoaa who was hanging onto the open passenger door frame. The Mustang traveled approximately 20 or 30 feet before Anjomshoaa fell off.

Anjomshoaa provided Davis Police Detective Stephen Ramos with the number associated with his cell phone, as well as text messages relevant to the incident, all of which provided the basis for issuance of a search warrant. Cell phone records obtained pursuant to that warrant revealed that one of the phone numbers matched defendant's number. From that information, Detective Ramos prepared a photographic lineup and showed it to Anjomshoaa, who identified defendant. Detective Ramos arrested defendant. Although defendant acknowledged being the person involved in the September 26, 2010, incident, he told Detective Ramos he dropped the phone outside the car when he decided not to buy it, but Anjomshoaa kept running next to the car and hitting it and yelling. Defendant also told police the driver of the Mustang was someone named "Terese."

Before trial, defense counsel received an e-mail from the district attorney stating: "I am informed that there may be *Brady*[2] material in the personnel file of Mike Munoz at the Davis Police Department. I have no access to officer personnel files." According to the police report associated with defendant's case, Officer Munoz prepared a photo lineup containing a DMV photo of the female registered owner of the Mustang involved in the incident. The photo lineup was shown to Vega, who was unable to identify anyone.

In response to the district attorney's e-mail, defense counsel filed a *Pitchess* motion seeking to discover evidence in Officer Munoz's personnel file pertaining to: (1) records or complaints against Officer Munoz, or possible disciplinary action against Officer Munoz; (2) disciplinary actions taken or to be taken due to "a demonstration of social, ethnic or other prejudice or allegation of misconduct"; (3) any incident involving lying, untruthfulness, falsifying evidence, and/or dishonesty; (4) the identity of persons submitting complaints of the aforementioned acts; (5) the identity of persons interviewed in connection with "complaints of excessive force, racial bias, ethnic prejudice, abuse of authority, and/or dishonesty in the course of [Officer Munoz's] employment"; and (6) information regarding Officer Munoz which forms the basis for litigation arising from claims or lawsuits "for use of excessive force, of aggressive conduct or of violence or demonstration of social, ethnic prejudice, or dishonesty in the course of [Officer Munoz's] employment."

Defense counsel's declaration in support of the motion stated that, based on the fact that "[d]efendant herein and the driver of the car allegedly used as the weapon in this case are both African American," any "complaints of dishonesty, racial, social bias or prejudice by [Officer Munoz] . . . would tend to show or will lead to evidence which will

---

**2**     *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215].

4

show a tendency or propensity on the part of [Officer Munoz] to engage [in] racial, social bias, prejudice in the execution of arrests, falsification of police reports, abuse of authority and compulsion to make narcotics arrests and/or use poor judgment," and such information was "critical as to the Officer's character for honesty and truthfulness." The declaration also stated the requested records may contain documentation of "allegations of the use of excessive force and/or violence towards suspects."

At the hearing on defendant's motion, the court expressed concern regarding the basis for the *Pitchess* motion given Officer Munoz's minimal participation in defendant's case. Agreeing that Officer Munoz's participation involved little more than preparing the photo lineup of the alleged driver, defense counsel insisted her obligation to determine whether the officer's personnel file contained *Brady* material required her to file the *Pitchess* motion in order to obtain that material. The court stated, "I'm not going to look at the file for *Pitchess* material. I don't think there's any relevance or any basis for *Pitchess*, and you are telling me that's not what you are after anyway." Defense counsel responded, "I have no idea." The court clarified, "You just want to know what *Brady* material if any is in there." Defense counsel answered, "That's true."

After reviewing the file to "see if there's some *Brady* material there that needs to be turned over," the court concluded, "There's no *Brady* material in the file and I can't tell you what the DA was referring to, but there is -- it has absolutely nothing to do with this case. It's not *Brady* material and there's just nothing there." Defense counsel responded, "That's all we needed . . . . [¶] As long as you filed my motion and the Court reviewed it, I'm very happy."

The matter proceeded to trial, after which a jury found defendant guilty as charged. At sentencing, the court sentenced defendant to three years in prison and imposed specified fees, fines, and assessments. The court subsequently awarded defendant presentence custody credits.

Defendant filed a timely notice of appeal.

5

DISCUSSION

I

*Pitchess Motion*

Defendant contends the trial court erroneously denied his motion to discover information in Officer Munoz's personnel file under *Pitchess*.  He requests this court to review the personnel records of Officer Munoz examined by the trial court to determine whether the trial court abused its discretion in "refusing to disclose [*Pitchess*] information."  He urges that, in the event the trial court failed to "make a record of what documents it reviewed" (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228), we must remand this matter to the trial court with directions to comply with the *Mooc* requirements and augment the record to ensure a complete record for review on appeal.  We find no abuse of discretion.

A defendant seeking discovery of material under *Pitchess* must support his motion with "affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue.  ([Evid. Code] § 1043, subd. (b)(3).)"  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).)

A showing of good cause requires that defendant "establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events."  (*Warrick*, *supra*, 35 Cal.4th at p. 1021.)  "To show good cause as required by [Evidence Code] section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges.  The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses."  (*Warrick*, *supra*, 35 Cal.4th at p. 1024.)

6

We review the trial court's denial of discovery of information from police personnel files for an abuse of discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992; *Pitchess v. Superior Court*, *supra*, 11 Cal.3d at p. 535.)

There was no abuse of discretion here. The district attorney notified defendant that there might be *Brady* material in Officer Munoz's personnel records. Defendant filed a *Pitchess* motion seeking the trial court's review of those records for *Brady* material. The trial court granted the motion, the basis for which was the district attorney's notification to defendant of possible *Brady* evidence. The court reviewed the records for *Brady* material and concluded there was no *Brady* material in Officer Munoz's personnel file. That is all trial counsel wanted.

Now arguing the court should have reviewed the file for *Pitchess* material, defendant failed to establish good cause for the requested discovery, stating only that he had "been advised by the prosecution that there may be *Brady* materials in the employee file of one of the investigating officers, Mike Munoz," and that "[i]t is suspected that the *Pitchess* and/or *Brady* information directly relates towards this officer's credibility, racial bias or discrimination, or some form of due diligence on the job." Defense counsel's supporting declaration added little, other than to state that defendant "and the driver of the car allegedly used as the weapon in this case are both African American."

Neither the motion nor the supporting declaration stated a proposed defense or attempted to establish a link, logical or otherwise, between that defense and the charges against defendant. While alluding to racial prejudice or bias on the part of Officer Munoz, the motion failed to assert specific facts of misconduct on the part of Officer Munoz related to the incident, or how all or any of the information sought supports the proposed defense or impeaches Officer Munoz's version of events. Indeed, the jury never heard Officer Munoz's version of events because he never testified at trial. And, while the police report attached to defendant's motion shows Officer Munoz prepared and presented to Vega the photo lineup that included the DMV photo of the registered

7

owner of the Mustang, Vega was not able to make an identification from that photo lineup.

While defendant now alludes to the fact that Officer Munoz, as "the supervising officer in charge of approving the investigative reports [authored] by [Officers] Arimboanga, Chudomelka, and Martin" (all three of whom did testify at trial), could have abused his authority, falsified reports, or acted with racial bias or prejudice, defendant made no similar assertion of misconduct below and the record is devoid of facts to support such an assertion.

Because defendant provided no logical link between his proposed defense and the charges against him, and in the absence of specific allegations of misconduct by Officer Munoz, defendant failed to establish a " 'plausible factual foundation' " or to " 'articulate a valid theory as to how the information sought might be admissible' " at trial. (*Warrick*, *supra*, 35 Cal.4th at p. 1025.) In short, defendant's *Pitchess* motion failed to make a proper showing of materiality. (*Warrick*, at pp. 1024-1025.)

Most important, the statements of defendant's trial counsel in response to the court's questions and comments regarding the scope of the *Pitchess* motion and its conclusion following review of the records, demonstrate that the *Pitchess* motion was intended as nothing more than a procedural vehicle by which to identify what, if any, *Brady* material, might be in Officer Munoz's file. Having conceded as much at the hearing below, defendant cannot now be heard to complain that the trial court erred in denying *Pitchess* review.

II

*Presentence Custody Credits*

Defendant contends the judgment should be amended to reflect the trial court's award of 39 days of presentence custody credit. The People concede this point, and we agree that the abstract needs correction.

8

Every day a defendant spends in custody is credited to his period of confinement pursuant to Penal Code section 4019. (Pen. Code, § 2900.5.) The sentencing court has a duty to determine the total number of days to be credited to defendant, and to include that number in the abstract of judgment. (Pen. Code, § 2900.5, subd. (d).)

At the May 9, 2013, sentencing hearing, the trial court imposed sentence but reserved the issue of defendant's custody credits for a subsequent hearing. The abstract of judgment, with the "credit for time served" left blank, was filed the following day.

At the May 22, 2013, continued sentencing hearing, the trial court ordered that defendant be awarded 34 days of actual custody credit, plus five days of conduct credit, for a total of 39 days of presentence custody credit. No amended abstract of judgment was issued.

Accordingly, defendant is entitled to 39 days of presentence custody credit.

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment reflecting the custody credit award and forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation. The judgment is affirmed.


    ROBIE    , Acting P. J.


We concur:


    MURRAY    , J.


    DUARTE    , J.


9