Filed 8/2/21  P. v. Davis CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KERRY ODELL DAVIS,<br><br>    Defendant and Appellant. | B306557<br><br>(Los Angeles County<br>Super. Ct. No. BA472810) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

—————————————

A jury convicted Kerry Odell Davis of two robberies. Davis challenges the trial court's *Pitchess* ruling, as well as an incorrect version of CALCRIM No. 226 and the denial of his *Romero* motion. We affirm. Undesignated statutory citations are to the Penal Code.

## I

### Davis's three robberies

The jury convicted Davis of two robberies. We call the first the Miranda robbery and the second the Garcia robbery. We call a third robbery the Hur robbery; it was not charged but it was a part of the evidence. This appeal does not challenge evidence about the Hur robbery.

### Miranda robbery

The Miranda robbery was on April 1, 2017. That evening Israel Hernandez went with his friend Victor Miranda to the Rodeo Room bar. They left and split up at Pico Boulevard. Video from the bar's security camera showed a man resembling Davis ride by on a bike in the direction Miranda went shortly after they left.

Around 2:30 a.m., paramedics found Miranda bloody and unconscious on the ground. He had no identification on him. Miranda has remained in a vegetative state since then. He cannot speak, recognize family members, or care for himself.

At 3:11 a.m., Davis tried to use Miranda's debit card to get money from an ATM about five miles from where paramedics found Miranda. The transactions failed because Davis did not know the PIN.

### Garcia robbery

The Garcia robbery was on November 5, 2017. Catalino Garcia and his wife returned from a restaurant around 2:00 a.m.

Garcia drank several beers at the restaurant. Garcia stayed outside his apartment building to smoke while his wife went inside. Security video showed a man who looked like Davis ride by on a bike. The man approached Garcia, there was a brief exchange, and suddenly the man punched Garcia. Garcia collapsed and hit his head on the ground. The man rifled through Garcia's pockets and got his wallet. Davis admitted he is the man in the video.

When Garcia came to, his head was bleeding, his jaw hurt, and his wallet was gone. He was in the hospital for three days. Doctors put a metal plate in his jaw, which continues to give him pain.

Hur robbery

The jury heard about a third robbery that was not charged but about which the prosecution offered evidence. On September 23, 2017, Benjamin Hur went to a karaoke bar on a date. He had several drinks. Around midnight, he stepped outside to get some air. He was sitting on a stone wall playing on his phone when an assailant hit him on his lower left jaw. When he regained consciousness, he realized his phone, wallet, and $5,700 watch were missing. Later that day, Davis pawned the watch.

Doctors wired Hur's jaw shut for six months. Hur still cannot eat some foods. He may require more surgery.

The police investigation

Six police officers investigated this case: Vinton, Carranza, Adams, Rodriguez, Hidalgo, and Hewitt. The trial court granted Davis's *Pitchess* motion about Vinton and Carranza but denied it as to the other four. We detail the role these six officers took in the investigation of Davis.

3

Detectives Vinton and Adams investigated the Miranda robbery. Vinton made a crime alert flyer from the images from the ATM where Davis tried to use Miranda's debit card. The detectives also collected video from the Rodeo Room.

Detective Carranza interviewed Hernandez and gave information about the interview to Vinton.

Detective Rodriguez spoke with Garcia and got surveillance video from the manager of Garcia's apartment building.

Officers Hidalgo and Hewitt arrested Davis on November 8, 2018. Together with another detective, Carranza took Davis to the station. Vinton interviewed Davis that day. Davis identified himself in the videos from the ATM and the surveillance camera at Garcia's apartment building, but denied robbing Miranda, claiming he found the debit card on the ground.

Vinton wrote an arrest report and a follow up investigation report.

Davis did not testify at trial. The jury convicted Davis of two counts of second degree robbery. (§ 211.) (The prosecutor did not bring charges related to the Hur robbery.) The jury found true allegations Davis personally inflicted great bodily injury against Miranda and Garcia. (§ 12022.7, subd. (b).) The trial court found true allegations Davis had three prior convictions for purposes of the Three Strikes Law. (§§ 667, subd. (d), 1170.12, subd. (b).) The trial court denied Davis's *Romero* motion and sentenced him to 58 years to life.

## II

We reject Davis's three appellate arguments.

## A

Davis incorrectly argues the trial court should have granted his *Pitchess* motion as to Adams, Hewitt, Hidalgo, and

4

Rodriguez. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); see also Evid. Code, § 1043.)

A successful *Pitchess* motion requires a defendant (1) to establish a logical link between a defense proposed to the pending charge, and (2) to articulate how the discovery sought would support that defense, or how it would impeach the officer's version of events. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.) We call this "the two-step process."

We ordinarily review a *Pitchess* order for an abuse of discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.) Review is independent when we interpret the statute itself. (*Riske v. Superior Court* (2016) 6 Cal.App.5th 647, 657 (*Riske*).) Davis's challenge fails under both standards of review.

The trial court found Davis showed good cause as to Vinton and Carranza. The trial court based this finding on allegations Vinton admitted at a Board of Rights hearing he failed to review a police report he should have known contained false information because his partner had switched the names of the codefendants and Carranza had been sued for falsifying evidence in a federal civil case.

Davis argues that, if he shows good cause as to one officer, the court should impute good cause as to any other officer in any way related to his case.

This argument is illogical. It posits one bad apple means all apples are bad.

Davis's opening brief satisfies neither step of the two-step process. The brief does not explain how discovery about the other four officers could support a defense for him or how it could impeach those officers' version of events. Davis's opening brief does not mention any possible defense for him: failure of proof,

identity, lack of intent, provocation, self defense, and so on.  And because these four officers did not testify at trial, none gave the jury a version of events Davis could have impeached.

Davis argues the other four officers "signed off" on reports by Vinton or Carranza.  This assertion does not explain how they did that, or identify a defense, or suggest how discovery could impeach anyone's version of events.

Davis's citations do not assist him.

*Riske, supra*, 6 Cal.App.5th 647 is irrelevant.  It held discovery was proper in a civil action when the discovery would show whether officers who won promotions were less qualified than the civil plaintiff, who was passed over.  Thus the discovery could reveal the employer's reasons for the promotions were pretextual.  (*Id*. at pp. 657–665.)  Davis makes no similar showing of good cause.

Another inapplicable holding comes from *Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25 (*Larry E.*).  This case held it was wrong to deny discovery about an officer named Loomis.  The petitioner alleged Loomis beat him during petitioner's arrest.  Loomis's alleged excessive violence could, the court held, assist the petitioner's defense of self-defense.  (*Id*. at pp. 28–33.)  Davis makes no similar showing of good cause.

*Cadena v. Superior Court* (1978) 79 Cal.App.3d 212, 218–223, is not pertinent for the same reason.

*Pierre C. v. Superior Court* (1984) 159 Cal.App.3d 1120, 1122–1123, also is not on point.  The case is similar to *Larry E.*, *supra*, 194 Cal.App.3d 25, except the proposed defense was false arrest rather than self-defense.

Davis's *Pitchess* argument lacks merit.

B

Davis contends the trial court committed prejudicial error by giving the jury a written and inaccurate version of CALCRIM No. 226. Both sides agree the written instruction was incorrect.

The form version of CALCRIM No. 226 reads, with our emphasis:

"If you decide that a witness deliberately lied about something significant in this case, *you should consider not believing anything that witness says*. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest."

The written version of the instruction provided to the jurors read, with our emphasis:

"If you decide that a witness deliberately lied about something significant in this case, *you should not consider anything that witness says*. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest."

Davis argues that, because it was clear he lied in his interview with Vinton, the jury must have interpreted this instruction to mean they could not consider anything he said. This prejudiced him, he maintains, because his statements to Vinton that he found Miranda's debit card were proof he did not rob Miranda.

This misinstruction did not prejudice Davis.

First, the instruction applied to witnesses. Because Davis did not testify, he was not a witness. This is especially the case because CALCRIM No. 358, which the court also provided to the jury, specifically applied to a defendant's out-of-court prior statements. This instruction made clear the jury was to decide

7

what importance to give Davis's statements to Vinton. Under these circumstances, any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Second, the evidence of Davis's guilt outweighed the evidentiary value of Davis's claim he found Miranda's debit card on the ground.

Video evidence showed a man resembling Davis riding a bike in the same direction as Miranda shortly after Miranda left the Rodeo Room. The prosecutor also demonstrated many similarities between the robbery of Garcia, which Davis admitted he committed, and the robbery of Miranda. Both times the assailant approached the men when they were alone and intoxicated. Miranda's injuries matched Garcia's: trauma to the left jaw. The robber took each man's wallet. These details also match the robbery of Hur. The fact Davis pawned Hur's watch right after the robbery corroborated Davis's identity as the robber.

The error did not prejudice Davis.

C

Davis argues the trial court abused its discretion by denying his *Romero* motion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) This argument is unavailing.

A trial court properly dismisses a prior strike only in the extraordinary case where a criminal who has committed multiple serious felonies can be said to be outside the spirit of the Three Strikes Law. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

Davis's case is not extraordinary. It is within the spirit of the Three Strikes Law.

8

The information alleged Davis suffered three prior strike convictions:  a conviction for attempted robbery (§§ 664 & 211) in 1983, and convictions for robbery (§ 211), and battery causing serious bodily injury (§ 243, subd. (d)) in 1988.  The trial court found the prior strikes true.

Davis argues the court abused its discretion because the judge said, "There's nothing about this defendant on which I can grant a motion to dismiss any of these prior convictions."  Davis contends this shows the trial court did not consider the evidence submitted in mitigation.  This claim does not follow.  The court's statement announced its conclusion.  It does not show the court's review was cursory or substandard.

Davis's criminal history offers little to support hope for rehabilitation.  Davis's prior strike convictions in 1983 and 1988 were remote in time, but Davis has suffered five additional felony convictions as well as eight misdemeanor convictions.  Felonies in 2008 and 2012 involved violent fist attacks, which was Davis's method here.  Under these circumstances, the lapse of time does not favor Davis.  (See *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)

Davis points out he did not use weapons in these crimes. This case shows how much damage fists alone can do.

Davis argues his age—57 at sentencing—mitigates his culpability.  One might equally conclude the opposite.  In maturity, Davis has not outgrown violence.  (See *People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Davis argues substance abuse was a mitigating factor. Davis apparently has not tried to combat substance abuse or addiction.  (See *Carmony*, *supra*, 33 Cal.4th at pp. 378–379.)

Davis suggests the robberies were attempts to provide for himself and his son.  Putting someone into a vegetative state is not a crime of survival.

Family, friends, and employers wrote letters of support for Davis.  Their assertions Davis was remorseful contrast with Davis's own claim at the sentencing hearing that he "did not do this."

The trial court did not abuse its discretion in finding Davis was within the spirit of the Three Strikes Law.

## DISPOSITION

We affirm the judgment.


WILEY, J.


We concur:



STRATTON, Acting P. J.



OHTA, J. [*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.