Filed 10/8/21  People v. Torrico CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOAQUIN TORRICO,<br><br>        Defendant and Appellant. | B305870<br><br>(Los Angeles County<br>Super. Ct. No. KA119913) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan C. Dominguez, Judge.  Conditionally reversed and remanded with directions.

Elizabeth H. Eng, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

———————

Appellant Joaquin Torrico was convicted of several offenses for allegedly possessing and shooting a gun on the night of January 28, 2018. His defense at trial was that he shot off fireworks, not a gun. He appeals the trial court's partial denial of his *Pitchess* motion and contends the trial court erred in failing to stay the sentence on his conviction of possession of a firearm by a felon. We conditionally reverse as to the *Pitchess* ruling and otherwise affirm.

A.    ***The People's Evidence at Trial***

Appellant had three children with Norma Martinez, from whom he is separated. The three children are Vanessa, age 16, and Daniel, age 9, who live with Norma, and David, age 18, who lives with appellant. Daniel spent the weekend of January 27, 2018 at appellant's house. On Sunday, January 28, 2018, Norma asked another daughter, Maribel Perez, to pick up Daniel after Maribel left work at 10:00 p.m. so Daniel would be home and ready for school the next day.

After work, Maribel picked up her half-sister Vanessa and headed over to appellant's house. She got a flat tire so she called her friend Kimberli for help. Kimberli came and drove the three of them to appellant's home, arriving about 11:00 p.m. On the way Vanessa texted her brother David who told her Daniel was sick and not going home. The three girls continued on to appellant's house anyway.

They arrived and parked across the street from appellant's house. Vanessa texted her father and asked him to send Daniel out to the car. In the meantime appellant had texted Norma and told her to tell Maribel and Kimberli to leave or he would start shooting. Norma thought he was joking.

2

Maribel, Vanessa, and Kimberli each gave three different versions of what happened next.  Maribel testified they were waiting about 10-15 minutes.  Norma contacted them and told them to leave.  As they were preparing to leave, appellant came out of his house with his brother Hugo.  Maribel saw appellant was carrying a black gun.  Maribel said appellant stood in his driveway, pointed the gun at them, and told them to leave.  Maribel told Kimberli to drive away and as they did so, they heard a gunshot.  Maribel did not see who shot the gun.  They drove up the street to call 911, and then went to a nearby McDonald's to await the police.

Kimberli, the driver, testified that while they were waiting outside appellant's house, Norma messaged them to leave.  They did not immediately leave.  Instead, they waited because Vanessa still believed her father was going to send out Daniel.  They waited 30-40 minutes when appellant came out with a black gun after getting a text from Vanessa's phone asking him to send Daniel to them.  (The police report states Kimberli said she saw him with a brown and grey semi-automatic firearm.  At the preliminary hearing Kimberli said it was a revolver.)  Kimberli testified appellant came out of the house, holding a gun and screaming, "You need to leave."  She saw appellant put his hand over the top of the gun and slide it back.  After they heard the gunshot, they drove away.

Vanessa gave the third version of events.  Vanessa testified she texted her father to send Daniel out and despite Norma's message, she wanted to wait for him to do so.  They waited outside the house and she testified no one ever came out of the house.  She said Kimberli pulled the car into the driveway and started honking the horn.  They heard a firework go off in the

3

backyard, but not a gunshot. They decided to call the police because Daniel was not coming out of the house. They went to McDonald's to await the police. Vanessa testified she lied when she told the 911 operator that appellant had a gray and brown "little pistol." Vanessa testified appellant has never owned a gun.

The 911 operator was told appellant came out of his house with a gun.

Deputy Brian Gorski spoke with Vanessa, Maribel, and Kimberli at the McDonald's and noted their descriptions of the event were almost identical. He detained appellant in the back of his car for 30 minutes before he tested appellant's hands for gunshot residue. The sample from appellant's hands was consistent with residue.

Detective David Lopez interviewed appellant at the station. Appellant said he had set off a firework, not used a gun. Lopez obtained a warrant to search for any weapons and any shell casings. He searched appellant's home and found a box of ammunition for a revolver or a semi-automatic weapon. No shell casings, fireworks, or firearms were discovered during the search.

B.  ***The Defense Case***

At 1:00 a.m. appellant and his brother arrived home from work, intending to go back out and buy food for the family to eat. When they arrived, David and appellant's girlfriend Magdalena were at the front door because they were planning to set off a firework. While the four of them were talking about what they wanted to eat, they noticed a car no one recognized parked across the street.

4

David asked his father to set off the firework he and Magdalena had brought out. When appellant bent down to set off the firework, the car pulled in front of the house, the occupants screamed at them "Fucking little bitch" and the car pulled away. Because the car left, appellant did nothing in response. Appellant set off the firework, the group decided what it wanted to eat, and then appellant and his brother went to a friend's house around the corner to see if the friend also wanted some food.

## C.    *Conviction and Sentence*

The jury convicted appellant of three counts of assault with a semiautomatic firearm; making a criminal threat; attempted criminal threats; discharging a gun with gross negligence; possession of a firearm by a felon; unlawful possession of ammunition. The jury found true the three gun use enhancements as to the assault counts. Appellant admitted a prior conviction as both a strike and a serious felony. The court ordered appellant to serve a total of 19 years eight months in state prison, consisting of four years for the assault, doubled to eight for the prior strike conviction; two years each for the other two assault convictions, five years for the prior serious felony conviction enhancement; two consecutive years for possession of a firearm by a felon; and eight months for the criminal threat. The sentences on the remaining counts were either imposed concurrently or stayed.

Appellant filed a timely notice of appeal.

**D.** ***The Trial Court Erred in Limiting the Pitchess Discovery to Instances of Fabrication of Police Reports Only.***

Appellant filed a discovery motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), for all "complaints from any and all sources relating to acts of, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, perjury, dishonesty, writing false police reports, and any other evidence of misconduct amounting to moral turpitude . . . against Detective D. Lopez." In the declaration in support of the motion, defense counsel declared "Lopez appears to have fabricated portions of his arrest report to justify the arrest and prosecution of the defendant as well as to undermine the defendant's statements regarding use of [a] firework that would lend in a defense against the [assault] charges and any evidence of GSR [gunshot residue]." More specifically, counsel declared both David and Magdalena maintained Detective Lopez never interviewed them and had he done so, they each would have confirmed that appellant had set off a firework. In contrast, Lopez's report stated that both David and Magdalena had told him they did not see appellant set off a firework.

The trial court partially granted the motion and ordered discovery of the personnel files of Detective Lopez as to fabrication of police reports only. Appellant contends that the trial court should have ordered broader discovery of any and all instances of dishonesty. We agree.

6

## 1. Standard of Review

We review the trial court's order under the abuse of discretion standard. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) Abuse of discretion occurs when the court's ruling falls outside the bounds of reason. (*People v. Waidla* (2000) 22 Cal.4th 690, 714.)

## 2. Applicable Law

On a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the personnel records of a police officer accused of misconduct against the defendant. (Evid. Code, § 1043, subd. (b).) Good cause for discovery exists when the defendant shows both materiality to the subject matter of the pending litigation and a reasonable belief that the agency has the type of information sought. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)

The information sought must be described with some specificity to ensure that the defendant's request is limited to instances of officer misconduct related to the misconduct asserted by the defendant. (*Pitchess*, *supra*, 11 Cal.3d at p. 537.) This specificity requirement excludes requests for officer information that are irrelevant to the pending charges; it also enables the trial court to identify what types of officer misconduct information, among those requested, will support the defense or defenses proposed to the pending charges. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 (*Warrick*).) For example, in *People v. Hustead* (1999) 74 Cal.App.4th 410, 416, the court found that prior instances of excessive force were irrelevant to the charge of evasion of arrest in an automobile.

Here the trial court found good cause for discovery of the officer's records, but apparently found the request overbroad. The trial court limited discovery to evidence of fabrication of police reports only, instead of a broader category of evidence of dishonesty, as requested by defendant. We see no basis to limit discovery to fabrication of police reports only. In that regard, we rely on *Warrick* where defendant was accused of dropping rocks of cocaine while he fled the police. Defendant contended that he dropped no rocks while he fled and that police officers fabricated their version of events. In discovery, defendant asked for disclosure of any previous citizen complaints against the arresting officers for making false arrests, falsifying police reports or planting evidence, and a long list of other types of misconduct. (*Warrick*, *supra*, 35 Cal.4th at p. 1017.) As the court put it, "Seekng to show that the officers had falsely arrested defendant and fabricated the facts in the arrest report, the defense sought to discover previous complaints against the officers for dishonesty." (*Ibid*.) The Court of Appeal had concluded that defendant was entitled only to disclosure of prior complaints that the officers had made false statements in police reports and it denied disclosure of documents that related to false overtime claims. (*Id*. at p. 2018.)

In ordering further disclosure, our Supreme Court stated that defendant need only show that the discovery sought "may lead to relevant evidence or may itself be admissible direct or impeachment evidence." (*Warrick*, *supra*, 35 Cal.4th at p. 1024.) Accordingly, the Court reversed the limited discovery order and held defendant was entitled to discovery of "officers' personnel records relating to making false arrests, planting evidence,

fabricating police reports or probable cause, *and committing perjury.*" (*Id.* at p. 1027, italics added.)

The *Warwick* Court permitted discovery of possible false overtime records, implicitly acknowledging that dishonesty may occur in different contexts, but, whatever the context, evidence of dishonesty may lead to admissible impeachment evidence. Here the trial court similarly limited discovery to fabrication in the preparation of police reports. Appellant's *Pitchess* request was broader, asking for documents of any other evidence of dishonesty. Given that appellant's defense was premised on his argument that Detective Lopez had lied in recounting what the witnesses had told him, his credibility was a central issue at trial. Just like in *Warwick*, any evidence of perjury or other dishonesty would have been critical to appellant's defense and should have been disclosed.

We have reviewed the transcript of the in camera hearing and we are unable to determine whether the custodian of records produced Detective Lopez's complete file or just those records that fell into the category of "fabrication of police reports." Our review of the transcript discloses the court reviewed complaints unrelated to dishonesty and there was no error in concluding those complaints were not discoverable. However, because it appears the trial court ruled that only complaints relating to fabrication of police reports were relevant, a limited remand is required to determine whether the officer's personnel file also included incidents that fall into the general category of "dishonesty." If there are no additional complaints in Detective Lopez's file during the relevant period other than those the court already reviewed and considered as reported in the transcript of the *Pitchess* hearing that is before us, then the court need not

9

repeat its findings as to the records it previously reviewed but should make it clear on the record there are no complaints in the general category of dishonesty.

Accordingly, we order a limited remand pursuant to the procedures outlined in *People v. Hustead, supra*, 74 Cal.App.4th at p. 423. We reverse the judgment conditionally and remand to the trial court to conduct another in camera hearing on the discovery motion as to all records of incidents of perjury or dishonesty. If there is no discoverable information in the file, then the trial court is ordered to reinstate the original judgment and sentence, and the judgment is ordered affirmed. If, however, there is relevant discoverable information in the officer's file, appellant should be given an opportunity to determine if the information would have led to any relevant, admissible evidence that he could have presented at trial. If appellant is able to demonstrate that he was prejudiced by the denial of the discovery, the trial court should order a new trial. If appellant is unable to show prejudice, then the conviction is ordered reinstated and the judgment is ordered affirmed.

Finally, appellant has asked us to review the record of the *Pitchess* in camera review to determine if anything in the files that were produced should have been disclosed. We have conducted that review and conclude all discoverable evidence was properly disclosed.

E.   ***The Trial Court Properly Declined to Stay the Sentence for Possession of a Firearm by a Felon***.

Appellant contends that the two-year consecutive sentence imposed for his conviction of possession of a firearm by a felon should have been stayed pursuant to Penal Code[1] section 654. He argues there was no independent evidence that he possessed the gun prior to the incident in which he was alleged to have used it.  We disagree.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." Where, as here, we are faced with a combination of possession of a firearm by a felon and another underlying offense, we decide whether possession of the firearm constitutes a divisible transaction from the offense in which the defendant employs the weapon.  Thus, where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved.  On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.  In which case, the sentence must be stayed under section 654. (*People v. Bradford* (1976) 17 Cal.3d 8, 22; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [sentence stayed where possession

---

[1]    All further section references are to the Penal Code.

11

was simultaneous physically and incident to only one objective, namely to shoot the victim].)

Section 654 does not apply where possession of the weapon preceded the assault. (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1217.) Indeed, where possession of the weapon would have been a completed offense even if no use had been made of it, no stay is required. (*People v. Hudgins* (1967) 252 Cal.App.2d 174, 184–185; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1411.)

Here the evidence established that when the girls arrived to pick up Daniel, appellant called Norma to "tell the girls to get the fuck out of here because I have a gun, and I will start shooting." A search days later revealed a holster and a box of ammunition in his bedroom, to which no one else had access.

This evidence belies the argument that possession of the weapon and the assault were simultaneous, justifying a stay of sentence. Appellant possessed a gun and threatened to use it before the confrontation began. The sentence was properly executed.

## DISPOSITION

The judgment is conditionally reversed and we remand to the trial court to conduct another in camera hearing on the discovery motion, as described above, to make clear whether there are any discoverable complaints of dishonesty. If there is no discoverable information in the file, then the trial court is ordered to reinstate the original judgment and sentence, and the judgment is ordered affirmed. If, however, there is relevant discoverable information in the officer's file, appellant should be given an opportunity to determine if the information would have led to any relevant, admissible evidence that he could have presented at trial. If appellant is able to demonstrate that he

was prejudiced by the denial of the discovery, the trial court shall order a new trial. If appellant is unable to show prejudice, then the conviction is ordered reinstated and the judgment is ordered affirmed. As to other grounds raised in this appeal, the convictions are otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

OHTA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13